**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 001**

 Outlook

---

## RE: Miriam Williams Correspondence

---

**From** Matthew Monson <matthew@monsonfirm.com>

**Date** Tue 6/13/2023 10:13 AM

**To** Michael North <Michael_North@laed.uscourts.gov>

📎 3 attachments (1 MB)

Butler et al Suit.pdf; GES v MMA.pdf; ARS v MMA.pdf;

Monson 026637

**From:** Michael North <Michael_North@laed.uscourts.gov>
**Sent:** Monday, June 12, 2023 12:10 PM
**To:** Matthew Monson <matthew@monsonfirm.com>
**Subject:** Miriam Williams Correspondence

This is what we spoke about earlier.  Thanks.

**********************************

MICHAEL B. NORTH
Chief United States Magistrate Judge
United States District Court
Eastern District of Louisiana
(504) 589-7610

Monson 026638

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 3 of 54

Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 1 of 24

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **C. BUTLER, D. E. BURKEY,** | § | |
| **E. J. BRADLEY, J. T. CAMPBELL,** | § | |
| **T. EBINGER, M. GREEN,** | § | |
| **C. E. JOCHUM, K. J. MCENTEE,** | § | |
| **N. S. MILLER, T. R. MOFFETT,** | § | |
| **L. M. MOUTSANIDES, K. OLIVO,** | § | |
| **T. POTTS, C. E. ROMERO, JR.,** | § | |
| **T. RUDOLPH, N. RUHOFF, and** | § | |
| **W. A. WASHINGTON,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO.  4:23-cv-01936** |
| **v.** | § | |
| | § | |
| **ACCESS RESTORATION** | § | |
| **SERVICES US, INC.,** | § | |
| **GLOBAL ESTIMATING SERVICES,** | § | |
| **INC.,** | § | |
| **AUTUMN K. GARIBAY,** | § | |
| **NATHAN NORMOYLE,** | § | |
| **MICHAEL NEEDHAM, and** | § | |
| **GUISEPPE GAGLIANO,** | § | |
| | § | |
| **Defendants.** | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

COME NOW, Plaintiffs C. Butler, D. E. Burkey, E. J. Bradley, J. T. Campbell, T. Ebinger, M. Green, C. E. Jochum, K. J. McEntee, N. S. Miller, T. R. Moffett, L. M. Moutsanides, K. Olivo, T. Potts, C. E. Romero, Jr., T. Rudolph, N. Ruhoff, and W. A. Washington, and through this suit bring claims against Defendants Access Restoration Services US, Inc. ("ARS"), Global Estimating Services, Inc. ("GES"), Autumn K. Garibay, Nathan Normoyle, Michael Needham, and Guiseppe Gagliano, for breach of contract and related claims (against GES and ARS), tortious interference with a contract (against ARS), and for violations of the Fair Labor Standards Act of 1938 ("FLSA")

Monson 026639

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 4 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 004
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 2 of 24

(against all Defendants). Plaintiffs make the following allegations and statements to support their claims:

## I. JURISDICTION AND VENUE

1.      Venue is proper in Harris County, Texas, as Plaintiffs worked under a contractual term that stated that Plaintiffs and GES "agree to jurisdiction in the state or federal Courts of Harris County, Texas concerning any disputes related to this Agreement." Furthermore, both ARS and GES have their headquarters registered with the state of Texas at the same address in the city of Conroe, Montgomery County, Texas, which is within this federal district. The damages and issues claimed are within the jurisdictional limits of this Court. This Court has personal and subject matter jurisdiction over the parties to this suit. This Court has federal question jurisdiction over this suit pursuant to 28 U.S.C. § 1331, given Plaintiffs' claims under the Fair Labor Standards Act.

## II. FAIR LABOR STANDARDS ACT JURISDICTION AND COVERAGE ISSUES

2.      Pursuant to 29 U.S.C. 216(b), an action to recover unpaid wages and other damages under the Fair Labor Standards Act may be maintained against any employer in any state or federal court of competent jurisdiction.

3.      At all material times, Defendants have acted, directly or indirectly, in the interest of an "employer" with respect to Plaintiffs, pursuant to the FLSA.

4.      At all times hereinafter mentioned, Defendants have each been an "employer" within the meaning set out in Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

5.      At all times hereinafter mentioned, Defendant GES[1] has been an enterprise within the meaning set out in Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

---

[1] As alleged in this complaint, all acts by and liabilities of GES are legally those of ARS as well, due to the fact that GES was acting as the alter ego of ARS.

2

Monson 026640

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 5 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 005
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 3 of 24

6.     At all times hereinafter mentioned, Defendant GES has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, dealing in, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes).

7.     At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

8.     Plaintiffs, in their position as "field inspectors," were not exempt from the overtime provisions of the FLSA, and are therefore covered by the overtime provisions of the FLSA.

9.     ARS and GES were a joint enterprise for purposes of FLSA applicability and liability.

### III.  PARTIES

10.    Plaintiff Carlos Butler ("C. Butler" and "Butler") is an individual resident of Ascension Parish, Louisiana.

11.    Plaintiff David E. Burkey ("D. E. Burkey" and "Burkey") is an individual resident of Arapahoe County, Colorado.

12.    Plaintiff Eric J. Bradley ("E. J. Bradley" and "Bradley") is an individual resident of East Baton Rouge Parish, Louisiana.

13.    Plaintiff Jeremy T. Campbell ("J. T. Campbell" and "Campbell") is an individual resident of DeSoto Parish, Louisiana.

14.    Plaintiff Tyler Ebinger ("T. Ebinger" and "Ebinger") is an individual resident of Fulton County, Georgia.

3

Monson 026641

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 6 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 006
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 4 of 24

15.     Plaintiff Malcolm Green ("M. Green" and "Green") is an individual resident of Harris County, Texas.

16.      Plaintiff Chas E. Jochum ("C. E. Jochum" and "Jochum") is an individual resident of St. Martin Parish, Louisiana.

17.     Plaintiff Kevin J. McEntee ("K. J. McEntee" and "McEntee") is an individual resident of El Paso County, Colorado.

18.     Plaintiff Natalie S. Miller ("N. S. Miller" and "Miller") is an individual resident of Lubbock County, Texas.

19.     Plaintiff Timothy R. Moffett ("T. R. Moffett" and "Moffett") is an individual resident of Douglas County, Oregon.

20.     Plaintiff Lisa M. Moutsanides ("L. M. Moutsanides" and "Moutsanides") is an individual resident of Douglas County, Oregon.

21.     Plaintiff Kimberly Olivo ("K. Olivo" and "Olivo") is an individual resident of Bexar County, Texas.

22.     Plaintiff Trevon Potts ("T. Potts" and "Potts") is an individual resident of Bexar County, Texas.

23.     Plaintiff Cesar E. Romero, Jr. ("C. E. Romero, Jr." and "Romero, Jr.") is an individual resident of Maricopa County, Arizona.

24.     Plaintiff Tracy Rudolph ("T. Rudolph" and "Rudolph") is an individual resident of Mobile County, Alabama.

25.     Plaintiff Nathaniel Ruhoff ("N. Ruhoff") is an individual resident of Guadalupe County, Texas.

4

Monson 026642

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 7 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 007
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 5 of 24

26.     Plaintiff Warren A. Washington ("W. A. Washington") is an individual resident of Mobile County, Alabama.

27.     Defendant Access Restoration Services US, Inc. is a foreign for-profit corporation registered in and doing business in the state of Texas. ARS was originally incorporated in the state of Delaware on September 18, 2017. ARS was subsequently registered in the state of Texas on January 5, 2022. ARS may be served with summons by serving its Texas registered agent as follows:

Andrews Meyers PC
1885 St James Place 15th Floor
Houston, TX 77056

28.     Defendant Global Estimating Services, Inc. is a foreign for-profit corporation, registered in and doing business in the state of Texas. GES may be served with summons by serving its Texas registered agent as follows:

C T Corporation System
1999 Bryan St. Suite 900
Dallas, TX 75201-3136 USA

29.     Defendant Autumn K. Garibay ("Garibay") is an individual resident of Harris County, Texas. Defendant Garibay may be served with summons at her residential address[2] of:

23770 Springwoods Village Pkwy, Apt 314
Spring, Texas 77373-5097

During her employment with GES, Garibay moved from Arizona to Texas to act as general manager for GES and conducted the business activities of GES and ARS within the state of Texas.

---

[2] Upon information and belief, Garibay may be in the process of moving back to Arizona. Nevertheless, Plaintiffs anticipate being able to identify her present location and timely serve her with summons at the appropriate time.

5

Monson 026643

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 8 of 54
**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 008**
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 6 of 24

30.     Defendant Michael Needham ("Needham") is an individual resident of Montgomery County, Texas. Defendant Needham may be served with summons at his business address of:

27657 Commerce Oaks Drive
Conroe, Texas 77385

During the facts relevant to this dispute, Needham conducted business on behalf of GES and ARS in the state of Texas.

31.     Defendant Nathan Normoyle ("Normoyle") is an individual resident of Harris County, Texas. He may be served with summons at his residential address of:

24819 Trull Brook Lane
Spring, Texas 77389

During the facts relevant to this dispute, Normoyle conducted business on behalf of GES and ARS in the state of Texas.

32.     Defendant Guiseppe Gagliano ("Gagliano") is an individual resident of the province of Ontario, Canada. He may be served with summons at his residential address of:

212 Dunvegan Road
Toronto, ON M5P 2P2, Canada

During the facts relevant to this dispute, Gagliano conducted business on behalf of GES and ARS in the state of Texas.

### IV. BACKGROUND FACTUAL ALLEGATIONS

33.     ARS is primarily involved in for-profit disaster remediation services in the United States and Canada. Per Texas Secretary of State records as well as its website,[3] the US corporate headquarters for ARS is located at 27657 Commerce Oaks Dr., Conroe, Texas.

34.     On April 21, 2023, ARS filed a lawsuit ("ARS/MMA Lawsuit") against the Houston law firm of McClenny, Moseley & Associates, PLLC ("MMA"). According to that lawsuit, on

---

[3] See <https://www.arsgem.com/contact>, last accessed May 25, 2023.

6

Monson 026644

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 009

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 9 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 7 of 24

December 17, 2021, ARS wired MMA the amount of $3 million as an investment to provide capital for MMA to use toward lead generation to bring in clients who had property damage claims from the August-September 2021 Hurricane Ida catastrophic weather event. As alleged by ARS, MMA through its principal John Moseley promised ARS a return on its investment at a rate of 429% in 9 months or 572% in 12 months. This would come from MMA paying ARS a portion of MMA's contingency attorney fees.[4] ARS alleges that it hasn't seen a dime from that investment and has therefore sued MMA and Moseley for various causes of action. That case is pending as *Access Restoration Services US, Inc. vs. McClenny Moseley & Associates, PLLC, et al.,* Cause No. 2023-25422 in the 270th Judicial District Court of Harris County, Texas.

35.     Furthermore, on April 26, 2023, using the same attorneys from the ARS/MMA Lawsuit, GES sued MMA on a claim that MMA owes GES $9.8 million for invoices for GES's work for MMA ("GES/MMA Lawsuit"). That case is pending as *Global Estimating Services, Inc. v. McClenny Moseley & Associates, PLLC,* Cause No. 2023-26243 in the 133rd Judicial District Court of Harris County, Texas. Plaintiffs do not know at this time what contractual terms may exist between GES and MMA to substantiate GES's claim.[5] The relevance of these cases to the present suit will be described shortly.

36.     Plaintiffs performed the work of "field inspectors" for GES.[6] In this position, Plaintiffs would travel to the sites of property loss to document the damage to the properties. Plaintiffs would

---

[4] Fee-sharing with a non-lawyer is prohibited by Rule 5.04(a) of the Texas Disciplinary Rules of Professional Conduct.

[5] Both the ARS/MMA Lawsuit and the GES/MMA Lawsuit are curiously lean on the disclosure of the parties' contractual terms and other fact allegations, despite the substantial monetary claims being made in those cases.

[6] Any representation that Plaintiffs performed work "for GES" or that an action was taken "by GES" is for historical convenience only and is not to be deemed an admission that GES was not the alter ego of ARS.

7

Monson 026645

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 10 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 8 of 24

merely document the property damage and transmit the information to GES's inside estimators. Although "field inspector" is an appropriate title for their position, to be clear, Plaintiffs did not actually "inspect" any properties to determine whether they conformed to any professional or regulatory standards. They merely "inspected" a site of property loss to document what damage they observed. As one Plaintiff describes it, the most discretion they exercised in this position was to determine whether a photo they took was too blurry and needed to be retaken.

37.     Plaintiffs understood that the residential claims on which they performed inspections in the field were for MMA clients. However, GES suspiciously instructed Plaintiffs never to speak to the lawyers at MMA concerning the property claim cases. Also suspiciously, GES instructed Plaintiffs to document *all* damage to the property, regardless of whether the damage was storm-related or not, and to keep their damage scope descriptions uncharacteristically vague. Even more suspiciously, GES refused to allow Plaintiffs to see any of the estimates performed by GES's inside estimators based on their inspections, or the insurance carrier estimates and cause of loss statements, despite the fact that all of the Plaintiffs were professionally certified to perform estimates. As one Plaintiff who has worked as an inside estimator describes it, in order to generate an accurate estimate, it is common for an inside estimator to communicate frequently with the field team for additional onsite information or clarification to help prepare a good faith, accurate estimate. However, GES did not want this exchange of information to take place.

38.     On or about January 5, 2022, ARS registered its DE-charted entity with the Texas Secretary of State as doing business in the state of Texas as a foreign for-profit corporation.

39.     On or about January 24, 2022, GES was created in the state of Delaware. On or about February 7, 2022, GES was registered with the Texas Secretary of State as doing business in the state of Texas as a foreign for-profit corporation.

8

Monson 026646

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 011

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 11 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 9 of 24

40.     Both ARS and GES identify the same two individuals as each company's managers – Defendant Guiseppe Gagliano and non-party Domenico Gagliano.[7] Both managers' addresses are given as ARS's Texas headquarters address – 27657 Commerce Oaks Drive, Conroe, TX 77385 USA – in both registrations. The state registrations of GES and ARS both identify that same address as the business address of both companies.

41.     Returning to the two MMA lawsuits, in the ARS/MMA Lawsuit, ARS claims damages related to its $3 million investment. ARS claims that it was promised a return on the investment that would apparently be in the $15M-$17M range. At the same time, in the GES/MMA Lawsuit, GES is claiming that it is owed $9.8 million in unpaid invoices from MMA for the same period of time. Plaintiffs wonder how ARS could have received a $15M-$17M return on its investment from these claims if GES was simultaneously burdening MMA with almost $10M in debt for work on those same claims.

42.     Upon information and belief, it appears that ARS set up GES to assist MMA in perpetrating potential fraud against the residential insurers of MMA's clients. Upon information and belief, it appears that ARS was likely using what were in fact inflated in-house property damage estimates for MMA cases to increase the claim values in those cases. Inflated estimates, in theory, would lead to higher claim values and therefore a more substantial return for ARS on its $3 million investment.

43.     While Plaintiffs are not aware of what specific methods may have been used to potentially inflate the property damage estimates (because of GES's own efforts to shield that information from them), the fact that GES would instruct its field inspectors to document non-covered, unrelated property damage, and to also leave the scope of damage sheets vague, would comport

---

[7] The Texas filing for GES erroneously identifies Domenico Gagliano as "Gagliano Domenico."

9

Monson 026647

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 012

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 12 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 10 of 24

with Plaintiffs' theory that ARS was using GES to perpetrate a fraud through, in part, the in-house estimates. Due to the facts set out within this section both from the personal knowledge of the Plaintiffs as well as those allegations made in good faith upon information and belief, Plaintiffs allege that GES was acting as the alter ego of ARS to assist in perpetrating a fraud.

44.     On or about February 10, 2022, Plaintiffs Washington, Moutsanides, Jochum, and non-party Trevor Brill met with Defendants Normoyle, Needham, and Gagliano at a newly-leased office in Spring, Texas about becoming the first three field inspectors for GES, with Brill as a manager. While they were informed about the $82,000 salary rate for the position, Defendant Normoyle specifically told the four that their bonuses for their work would amount to twice their salary, to entice them into moving forward with GES.

45.     Normoyle is ARS's Vice President of Global Operations. Upon information and belief, Normoyle also served as President of GES throughout the employments of Plaintiffs. These three plaintiffs went forward with GES based on Normoyle's representations about the substantial bonuses they would be receiving.

46.     In preparation for this meeting, on February 9, 2022, Defendant Normoyle himself emailed human resources hiring documentation to Plaintiff Washington and informed Washington that Normoyle's executive assistant, Tana Brandsma (also apparently an ARS employee), would contact Washington for additional coordination.

47.     To perform the work for GES, Plaintiffs were issued equipment and vehicles that, upon information and belief, are/were likely owned by and/or leased by ARS.

48.     As described below, one-by-one, each Plaintiff came on board with GES as a field inspector, with a promise of these substantial bonuses but no other plan terms otherwise in place.

Monson 026648

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 13 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 013
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 11 of 24

49.     In around July 2022, GES issued more details of the bonus agreement pursuant to which the GES field inspectors had been working. That bonus structure included three types of bonuses:

- A quality of site inspection bonus, which would be a fixed $2,000 bonus per quarter.

- A customer service quality bonus, which would also be a fixed $2,000 bonus per quarter.

- A variable bonus that would be based on the number of completed inspections, and that would provide the most substantial bonuses for the field inspectors.

All of the Plaintiffs in this case have earned bonuses pursuant to that stated bonus structure yet none of them have been paid a dime.

50.     Upon information and belief, and due to various interactions that various Plaintiffs had with ARS executives and managers, Plaintiffs contend that executives and managers from ARS, including Defendants Normoyle, Needham, and Gagliano, were regularly and frequently directing the operations of GES through general manager Autumn Garibay. It was obvious to at least some Plaintiffs (perhaps all) that Garibay lacked sufficient industry knowledge to effectively run the GES operation. More cynically, Plaintiffs contend that the alleged fraud using GES could not have been conducted without the direct coordination and control of ARS executives, and that Garibay was selected (in part) specifically due to her lack of appropriate industry knowledge.

51.     Throughout their employments, some Plaintiffs have complained that GES was late on their salary paychecks on at least a half-dozen occasions, demonstrating that GES was insufficiently capitalized for its operations, including the bonuses being promised. In fact, Plaintiffs are not aware of GES ever receiving revenue from its work for MMA clients, which, if true, would mean that ARS would likely have been funding the salaries and operations of GES throughout the company's existence. Therefore, upon information and belief, Plaintiffs contend that this was the case.

11

Monson 026649

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 14 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 014
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 12 of 24

52.     On or about April 28, 2023, ARS human resources generalist Salena Ali sent out a letter to the field inspectors still employed by GES at that time, including many Plaintiffs in this case, that the company would be shutting down effective that day. To date, GES hasn't paid a single bonus to any of the Plaintiffs nor has GES even taken the basic act of issuing any bonus sheets to any of the Plaintiffs as stated in the written version of the bonus agreement. By this point, GES was already late for any bonuses earned by field inspectors for at least the calendar quarters of 2022 and Q1-2023.

53.     The day after the remaining team was terminated from GES, Plaintiff Jochum spoke with Garibay by phone and asked about his bonus. Garibay told him that he would not be getting a bonus, and refused to give him any information by which he could calculate the bonuses he believes he is owed.[8] On or about May 10, 2023, Jochum sent an extensive email setting out his concerns to various managers and executives at GES and ARS. During a call the following day, ARS HR representative Vince Wong[9] told Jochum that the field inspectors were never supposed

---

[8] As a result, Jochum's bonus claim stated in this complaint is based on his maximum possible bonus under the bonus agreement structure that was set out in writing a few months after Jochum had been employed.

[9] Despite being assigned an @ges.inc email address in addition to his standing ARS-issued email address, Wong publicly identifies his job position as "Corporate Human Resources Manager at ARS - Global Emergency Management / TGA Group" on LinkedIn. His LinkedIn profile and work history make no mention whatsoever of any employment or involvement with GES. See <https://ca.linkedin.com/in/vince-wong-82479978>, last accessed May 24, 2023. Nathan Normoyle was also assigned an @ges.inc email address in addition to his standing ARS email address, but similarly makes no mention of GES on his LinkedIn profile and work history. See <https://www.linkedin.com/in/nathan-normoyle>, last accessed May 24, 2023. Curiously, while Defendant Needham appears to also have been assigned an @ges.inc email address, a Google search on May 24, 2023 suggests that he had a LinkedIn profile that was recently removed. Furthermore, it appears that the cached version of his public LinkedIn page that might otherwise remain publicly available through Google has also been removed or deleted. Therefore, it is unknown what Needham publicly represented in that prior LinkedIn account.

Monson 026650

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 015
Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 15 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 13 of 24

to get bonuses. Essentially, Wong was confessing that the bonus promises all along had been a fraud on the field inspectors.

54.     Plaintiffs contend upon information and belief that executives and managers from ARS directed Garibay and GES not to issue bonuses to Plaintiffs or otherwise proceed with the company's contractual obligations under the bonus agreements. ARS was aware of the bonus agreements between GES and the Plaintiffs and in reality had created them. By so directing Garabay and GES, ARS was interfering with the contractual relationships between Plaintiffs and GES and proximately caused the Plaintiffs the loss of this compensation.

55.     There were other circumstances that demonstrated the interconnectedness of ARS and GES. Some examples:

- GES offer letters to the Plaintiffs were signed by Scott Jacobi, Chief Financial Officer of ARS.

- Gas cards were imprinted with the account name "ARS GES."

- On occasion, a Plaintiff has been paid directly by ARS rather than GES despite being ostensibly employed by GES.

- The companies' payroll provider has sometimes listed a Plaintiff as being employed by ARS rather than GES.

- While working in Florida, Plaintiffs were required to fill out ARS timesheets bearing the ARS logo.

- Also in Florida, ARS, GES, and MMA created a joint "campsite" to process Hurricane Ian claims.

- Many other executives and managers at ARS held mirror @ges.inc email addresses.

13

Monson 026651

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 16 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 016
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 14 of 24

Plaintiffs believe that discovery in this case will yield additional ties, including many financial ties between ARS and GES in the companies' financial records (to which Plaintiffs have not had access) that substantiate Plaintiffs' allegations that GES was merely an alter ego of ARS.

**The field inspectors were non-exempt from the overtime provisions of the FLSA.**

56.     The field inspector plaintiffs in this case were non-exempt under the Fair Labor Standards Act of 1938. Their responsibility was to take photos of the property (whether damaged or not) and upload data into software that would prepare a sketch of the property. The field inspectors would then transmit that information to GES's inside estimators, who would (secretly) prepare the property damage estimates. The field inspectors' primary duty did not involve the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. Furthermore, their primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance. In fact, the field inspectors were performing the manual "line work" of the services provided by GES, specifically the type of work that the FLSA and controlling case law describe as non-exempt work.

57.     All of the field inspectors in this case were paid on a salary basis.

58.     All of the field inspectors worked over 40 hours in more than one workweek during their respective employments with GES. For example, as their (ARS) timesheets would demonstrate, the inspectors frequently worked 12-hour days at their assigned work locations, especially for their work in Florida following Hurricane Ian, often exceeding 40 hours in a workweek.

59.     Because GES was only formed in January 2022, all of the overtime work described in this suit took place within 2 years from the date of filing of this suit. With that said, Plaintiffs still contend as a matter of course that Defendants' violations of the FLSA were willful.

14

Monson 026652

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 017

Case 26-03107  Document 1-31  Filed in TXSB on 04/08/26  Page 17 of 54
Case 4:23-cv-01936  Document 1  Filed on 05/25/23 in TXSD  Page 15 of 24

60.     At no time were any of the Plaintiffs in this case paid an overtime premium for hours worked over 40 in a workweek, in violation of the FLSA.

**The individual bonus and overtime claims of the field inspector plaintiffs in this case**

61.     Plaintiff Butler worked for GES from on or about May 16, 2022 to on or about March 12, 2023 as a field inspector. Pursuant to the GES bonus structure, Butler is owed at least $4,000 for Q4-2022 and a currently unknown amount for his work in Q1-2023. Furthermore, during one or more workweeks during Butler's employment with GES, Butler worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

62.     Plaintiff Burkey worked for GES from on or about May 31, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Burkey is owed at least $47,000. Furthermore, during one or more workweeks during Burkey's employment with GES, Burkey worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

63.     Plaintiff Bradley worked for GES from on or about July 18, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Bradley is owed at least $32,000. Furthermore, during one or more workweeks during Bradley's employment with GES, Bradley worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

64.     Plaintiff Campbell worked for GES from on or about May 31, 2022 to on or about March 13, 2023 as a field inspector. Pursuant to the GES bonus structure, he is owed at least $57,000 for bonuses. Furthermore, during one or more workweeks during Campbell's employment with GES, Campbell worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

15

Monson 026653

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 18 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 018
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 16 of 24

65.     Plaintiff Ebinger worked for GES from on or about May 23, 2022 to on or about April 28, 2023. Pursuant to the GES bonus structure, Ebinger is owed at least $40,000 in bonuses. Furthermore, during one or more workweeks during Ebinger's employment with GES, Ebinger worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

66.     Plaintiff Green worked for GES from on or about May 15, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Green is owed at least $47,000 in bonuses. Furthermore, during one or more workweeks during Green's employment with GES, Green worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

67.     Plaintiff Jochum worked for GES from on or about February 9, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, upon information and belief, and subject to data to be obtained in discovery, Jochum contends he is owed at least $80,000 for bonuses. Furthermore, during one or more workweeks during Jochum's employment with GES, Jochum worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

68.     Plaintiff Louis[10] worked for GES from on or about May 15, 2022 to on or about March 13, 2023 as a field inspector. Pursuant to the GES bonus structure, Louis is owed at least $62,500. Furthermore, during one or more workweeks during Louis's employment with GES, Louis worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

---

[10] Plaintiffs Louis, Moffett, and Washington had some supervisory duties in addition to substantial field inspector duties. Those Plaintiffs will contend that their substantial field inspector duties made them non-exempt under the FLSA.

16

Monson 026654

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 019
Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 19 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 17 of 24

69.     Plaintiff McEntee worked for GES from on or about March 23, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, McEntee is owed at least $33,600. Furthermore, during one or more workweeks during McEntee's employment with GES, McEntee worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

70.     Plaintiff Miller worked for GES from on or about May 9, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Miller is owed at least $31,000. Furthermore, during one or more workweeks during Miller's employment with GES, Miller worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

71.     Plaintiff Moffett worked for GES from on or about May 23, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Moffett is owed at least $58,200. Furthermore, during one or more workweeks during Moffett's employment with GES, Moffett worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

72.     Plaintiff Moutsanides worked for GES from on or about February 10, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Moutsanides is owed at least $47,000. Furthermore, during one or more workweeks during Moutsanides's employment with GES, Moutsanides worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

73.     Plaintiff Olivo worked for GES from on or about March 21, 2022 to on or about March 13, 2023 as a field inspector. Pursuant to the GES bonus structure, Olivo is owed at least $8,000 for Q1 and Q2 2023. Furthermore, during one or more workweeks during Olivo's employment with

17

Monson 026655

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 20 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 020
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 18 of 24

GES, Olivo worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

74.     Plaintiff Potts worked for GES from on or about May 31, 2022 to on or about January 4, 2023 as a field inspector. Pursuant to the GES bonus structure, Potts is owed at least $39,000. Furthermore, during one or more workweeks during Potts's employment with GES, Potts worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

75.     Plaintiff Romero, Jr. worked for GES from on or about May 23, 2022 to on or about March 13, 2023 as a field inspector. Pursuant to the GES bonus structure, Romero, Jr. is owed at least $47,000. Furthermore, during one or more workweeks during Romero, Jr.'s employment with GES, Romero, Jr. worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

76.     Plaintiff Rudolph worked for GES from on or about May 23, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Rudolph is owed at least $55,000. Furthermore, during one or more workweeks during Rudolph's employment with GES, Rudolph worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

77.     Plaintiff Ruhoff worked for GES from on or about March 21, 2022 to on or about March 13, 2023 as a field inspector. Pursuant to the GES bonus structure, Ruhoff is owed at least $27,000. Furthermore, during one or more workweeks during Ruhoff's employment with GES, Ruhoff worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

Monson 026656

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 21 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 021
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 19 of 24

78.     Plaintiff Washington worked for GES from on or about February 9, 2022 to on or about April 28, 2023 as a field inspector. Pursuant to the GES bonus structure, Washington is owed at least $78,000. Furthermore, during one or more workweeks during Washington's employment with GES, Washington worked more than 40 hours in a workweek and was not paid an overtime premium for all hours over 40 in each such workweek.

**Individual liability under the FLSA**

79.     Garibay was the General Manager of GES and was directly involved in its daily operations. Upon information and belief, Garibay also served as a conduit for the directives and messages of the other defendants in this case, and worked under their supervision in executing the daily operations of GES and the fraud alleged by the Plaintiffs in this case. Garabay herself engaged in direct supervision of the Plaintiffs in this case, and exercised control over the working conditions and work schedules of the Plaintiffs.

80.     Upon information and belief, ARS Vice President of Global Operations Nathan Normoyle was directing GES management decisions through Garibay and acted as President of GES. Normoyle was intimately involved in the hiring of certain Plaintiffs in this case. Normoyle had the power to hire and fire at GES, supervise and control work schedules and conditions of employment of the Plaintiffs, determine the rate and method of payment of the Plaintiffs, and maintain employment records of GES.

81.     Upon information and belief, ARS Director of Field Operations Michael Needham was also directing GES management decisions through Garibay. Needham was intimately involved in the hiring of certain Plaintiffs in this case. Needham had the power to hire and fire at GES, supervise and control work schedules and conditions of employment of the Plaintiffs, determine the rate and method of payment of the Plaintiffs, and maintain employment records of GES.

19

Monson 026657

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 22 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 022
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 20 of 24

82.     Upon information and belief, ARS President Guiseppe "Joe" Gagliano was also directing GES management decisions through Garibay and the ARS executive team. Gagliano was intimately involved in the hiring of certain Plaintiffs in this case. Gagliano had the power to hire and fire at GES, supervise and control work schedules and conditions of employment of the Plaintiffs, determine the rate and method of payment of the Plaintiffs, and maintain employment records of GES.

**Additional monetary losses**

83.     The final paychecks of Plaintiffs Jochum and Moutsanides each contained an unlawful deduction of $300. Neither Jochum nor Moutsanides authorized these deductions by a writing bearing their signature as required by Texas law.

## V.  CAUSES OF ACTION

### Cause of Action 1: Breach of Contract (GES and ARS)

84.     Incorporating the facts alleged above, Plaintiffs allege that Defendant GES breached its contract with Plaintiffs by failing to pay all bonuses earned by Plaintiffs through their performance, thereby causing Plaintiffs damages. Plaintiffs Jochum and Moutsanides further allege that GES failed to pay $300 of the final salary payment due to each individual, as part of an unlawful deduction exercised by GES. These deductions were also violations of Texas Labor Code § 61.018(3). Plaintiffs seek the amount of unpaid bonuses and unlawfully withheld compensation due, as well as any consequential or special damages, pre- and post-judgment interest, attorney fees, and costs. Defendant ARS bears equal liability for any liabilities of GES due to the fact that GES was in fact the alter ego of ARS.

### Cause of Action 2: Unjust Enrichment and Quantum Meruit (GES and ARS)

Monson 026658

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 23 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 023
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 21 of 24

85.     In the event that the Court finds that there is no contract between the parties on the subject matter of their claims, Plaintiffs contend that Defendant GES would be unjustly enriched by allowing GES to retain the compensation earned through the efforts of its field inspectors, who executed their duties in reliance on GES's representations concerning incentive compensation. Plaintiffs seek the amount of unpaid bonuses, as well as any consequential or special damages, pre- and post-judgment interest, attorney fees, and costs. In addition to and in the alternative, Plaintiffs claim the bonus amounts in *quantum meruit*. Defendant ARS bears equal liability for any liabilities of GES due to the fact that GES was in fact the alter ego of ARS.

### **Cause of Action 3: Promissory Estoppel (GES and ARS)**

86.     Furthermore and in the alternative, Defendant GES should be promissorily estopped from retaining Plaintiffs' bonuses. GES issued promises to Plaintiffs concerning their prospective bonuses, including Normoyle's promise that the bonus would be twice their salary, and it was reasonably foreseeable that Plaintiffs would rely on the promises to take the position and perform in the manner by which they would work toward the bonuses based on such promises. Plaintiffs ultimately substantially relied on the promises to their detriment, in both substantially performing and completing work toward the bonuses that were promised to them. The bonus promise was a unilateral offer that Plaintiffs accepted by performance. Therefore, they are rightfully entitled to the bonuses that they earned from their work in reliance on those promises.

### **Cause of Action 4: Tortious Interference with a Contract (ARS)**

87.     In the event that Defendant GES is found not to be the alter ego of ARS, and therefore ARS is deemed to be an independent actor for purposes of liability in this case, ARS tortiously interfered with Plaintiffs' contracts with GES by directing GES to not pay bonuses to the Plaintiffs or otherwise conform to its pay obligations with respect to the Plaintiffs, and therefore cause GES to

Monson 026659

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 024

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 24 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 22 of 24

breach its agreements with the Plaintiffs. ARS was well aware of the contracts between GES and the Plaintiffs and, despite that knowledge, willfully and intentionally interfered with those contracts by directing GES not to comply with them. ARS's interference was the proximate cause of damages claimed by the Plaintiffs in this suit resulting from GES's breach of their pay agreements. Plaintiffs claim all damages available by law, including economic damages, mental anguish damages, punitive damages, pre- and post-judgment interest, and costs.

### Cause of Action 5: Overtime Violations under the Fair Labor Standards Act (all Defendants)

88.     During the three years prior to the filing of this complaint, all Defendants violated the FLSA, including 29 U.S.C. §§ 206-7 and 215(a)(2), by employing these employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as previously stated, where such employees worked in multiple workweeks for more than 40 hours in each such workweek, without Defendants compensating these employees for all of their compensable work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed. Plaintiffs are not exempt from the overtime provisions of the Fair Labor Standards Act. Defendants have acted willfully in failing to pay Plaintiffs in compliance with the FLSA. Plaintiffs are entitled to their unpaid overtime wages, liquidated damages in an amount equal to such unpaid overtime wages, attorney fees, court costs, and pre- and post-judgment interest. Plaintiffs further contend that GES and ARS were engaged in a joint enterprise and should be considered jointly for purposes of FLSA applicability and liability.

### VI.  ADDITIONAL LEGAL CONTENTIONS

89.     To the extent that GES claims that a bonus was not earned by a field inspector, such Plaintiff would contend that they engaged in substantial performance under the bonus agreement as to the work qualifying them for the bonus. Such Plaintiff would also contend that the bonus

22

Monson 026660

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 025

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 25 of 54
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 23 of 24

agreement was a unilateral offer that was accepted by the Plaintiff's performance of the qualifying estimating work and completion of calendar quarters with qualifying customer and site inspection performance, and no terms of the bonus agreement allowed GES to withhold bonuses altogether once performance had been rendered. Plaintiffs further contend that GES has waived any such contentions based on their statements and assurances to Plaintiffs concerning the future payment of their bonuses following the issuance of the written bonus structure. The acts and omissions of Defendant GES are the acts and omissions of Defendant ARS due to the fact that GES was in fact the alter ego of ARS.

90.     To the extent that GES claims that an event has yet not occurred that entitles GES to withhold Plaintiffs' bonuses until such event occurs, Plaintiffs would contend that GES's action is based on a condition precedent unrelated to a Plaintiff's performance, and such condition precedent is not a material performance condition to such Plaintiff's right to their claimed bonuses otherwise earned for completed performance under the bonus agreement. The acts and omissions of Defendant GES are the acts and omissions of Defendant ARS due to the fact that GES was in fact the alter ego of ARS.

91.     To the extent that the written bonus plan eventually issued by GES modifies the terms of an original bonus agreement made verbally or in writing to a Plaintiff, the written bonus plan constitutes a modification of the original agreement.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Court:

a. assume jurisdiction of this action and cite Defendants to appear;

23

Monson 026661

Case 26-03107   Document 1-31   Filed in TXSB on 04/08/26   Page 26 of 54
AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 026
Case 4:23-cv-01936   Document 1   Filed on 05/25/23 in TXSD   Page 24 of 24

b. award Plaintiffs all damages requested above, including economic, consequential, compensatory, and punitive damages as allowed by law, as well as liquidated damages under the FLSA, and attorney fees;

c. award Plaintiffs costs, expert witness fees, and attorney fees;

d. award Plaintiffs pre- and post-judgment interest at the highest rates allowed; and

e. award Plaintiffs any such other relief as the Court may deem proper.

Respectfully submitted,

**Kerry V. O'Brien**
Texas Bar No. 24038469
Board Certified in Labor & Employment Law by the TBLS



1011 Westlake Drive
Austin, Texas 78746
email: ko@obrienlawpc.com
phone: (512) 410-1960
fax: (512) 410-6171

**COUNSEL FOR PLAINTIFFS**

24

Monson 026662

4/21/2023 10:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 74920622
By: Gerardo Perez
Filed: 4/21/2023 10:23 PM

## 2023-25422 / Court: 270

CAUSE NO. _____

| | | |
|---|---|---|
| ACCESS RESTORATION SERVICES US, INC. | § § § | IN THE DISTRICT COURT OF |
| vs. | § § | HARRIS COUNTY, TEXAS |
| | § | |
| McCLENNY MOSELEY & ASSOCIATES, PLLC and JOHN ZACHARY MOSELEY | § § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Plaintiff, ACCESS RESTORATION SERVICES US, INC. ("Plaintiff"), and files this its Original Petition against Defendants, McCLENNY MOSELEY & ASSOCIATES, PLLC ("MMA") and JOHN ZACHARY MOSELEY ("Moseley"), and would respectfully show the Court as follows:

#### DISCOVERY CONTROL PLAN

1. Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.4.

#### PARTIES

2. Plaintiff, ACCESS RESTORATION SERVICES US, INC., is a Delaware corporation, registered with the Texas Secretary of State to conduct business in Texas, with its principal place of business located in Montgomery County, Texas.

3. Defendant, McCLENNY MOSELEY & ASSOCIATES, PLLC, is a Texas limited liability company with its principal place of business located in Houston, Texas. Defendant may be served with process by serving its registered agent for service of process as follows:

CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

or by serving any member anywhere he may be found.

1

Monson 026663

4.      Defendant, JOHN ZACHARY MOSELEY, is an individual who is a resident of Harris County, Texas. Defendant may be served with process by serving him at 1214 West Dallas, Houston, Texas 77019, or anywhere he may be found.

### JURISDICTION & VENUE

5.      Venue is proper in Harris County, Texas, because all or a substantial part of the events giving rise to Plaintiff's claim occurred in Harris County, Texas.

6.      The Court has jurisdiction over the controversy because the damages sought are within the jurisdictional limits of this Court. Plaintiff seeks monetary relief over $1,000,000.00, excluding interest, attorneys' fees and costs. TEX. R. CIV. P. 47(c)(4).

7.      The Court has jurisdiction over Defendants because they are Texas residents.

### BACKGROUND

8.      Plaintiff entered into a financing and investment agreement ("Agreement") with MMA, a law firm specializing in "insurance dispute resolution", whereby Plaintiff agreed to loan MMA $3,000,000.00 to provide financing for litigation MMA was pursuing on behalf of certain of its clients with claims against their respective insurers relating to damage caused by Hurricane Ida. In exchange for the $3 million investment, MMA represented that Plaintiff would be paid a 429% return on its investment in 9 months, or a 572% return on its investment within 12 months.

9.      Upon information and belief, MMA is not registered to sell securities in the State of Texas. Nevertheless, MMA and Moseley solicited and obtained the investment agreement from Plaintiff. Said investment agreement constitutes a security, and upon information and belief MMA did not register such security, in violation of the Texas Securities Act.

10.     Furthermore, in an effort to induce Plaintiff into the Agreement, Moseley made specific and detailed material misrepresentations regarding the firm's performance with respect to the

2

Monson 026664

subject hurricane damage claims. On December 9, 2021, Moseley represented to Plaintiff that a $3 million investment would generate 1,000 or more hurricane clients per month for MMA. He further represented that the cost to acquire a client was $3,000 per client. Moseley represented that the projected return in attorneys' fees to MMA was $33,000 per client, with a return to Plaintiff of 15% of said attorneys' fees, which he equated to $4,950 per client.

11.     Moseley represented that MMA's settlements averaged $260,000 for the week prior (i.e., the first week of December 2021), and from that amount MMA's average attorney fee recovery was $85,000.00. His investment solicitation to Plaintiff and the Agreement stated, "[a]ssuming this trend continues, a $3,000.00 investment per case would net a $12,870 payout to Lender. That nets a 429% return to Lender in what MMA expects in 9 months – or an annual return of 572%."

12.     Moseley's solicitation and the Agreement further represented to Plaintiff that MMA "used very conservative modeling projections in order to show that even if MMA wasn't able to recoup half of average settlement value, Lender's returns would still be over 50% on an annualized basis." Moseley also represented that MMA would provide Plaintiff with access to a portal that contained a table updated every morning with detailed information regarding: dollars spent, number of cases signed, a list of claimants, insurance carrier of signed cases, and a map showing geographic location of each signed client's property. Moseley the memorialized the aforementioned terms in the Agreement he sent to Plaintiff.

13.     Plaintiff decided to provide the financing/investment after Moseley provided the investment summary set forth above. In reliance on Moseley's representations, on or about December 17, 2021, Plaintiff wired MMA $3,000,000.00 for the financing/investment. From that point forward, MMA and Moseley had control over Plaintiff's investment funds.

3

Monson 026665

14.     Notably, after Plaintiff provided its $3 million investment to MMA, it was only briefly able to access the portal until it inexplicably became inaccessible. Plaintiff repeatedly requested that MMA resume allowing Plaintiff to access the portal so it could monitor its investment. Moseley promised to return Plaintiff's access, but never followed through on that promise and Plaintiff remains unable to access the portal. Furthermore, over a year has passed since Plaintiff provided the $3 million to MMA, and MMA has failed to provide a single dollar of investment return to Plaintiff.

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT

15.     Plaintiff and MMA entered into an enforceable agreement supported by consideration. Plaintiff performed, or in the alternative substantially performed, all of its obligations under the Agreement with MMA. Specifically, Plaintiff provided the $3,000,000 investment/financing per the parties' Agreement.

16.     MMA materially breached the Agreement by failing to pay Plaintiff per the terms of the Agreement, for which Plaintiff seeks recovery in this lawsuit of at least $3,000,000, plus attorneys' fees, interests and costs.

### SECOND CAUSE OF ACTION:
### FRAUD / FRAUDULENT INDUCEMENT

17.     As set forth above, Moseley made material representations to Plaintiff in order to induce Plaintiff to enter into the investment agreement and provide the $3 million investment to MMA.

18.     These representations by Moseley were false and he knew these representations were false. Plaintiff reasonably relied on these representations when it entered into the investment agreement and wired the $3 million to MMA. In relying on these representations, Plaintiff was

4

Monson 026666

injured. Plaintiff seeks and is entitled to recover its actual damages, including the $3 million paid by Plaintiff to MMA.

### THIRD CAUSE OF ACTION:
### VIOLATION OF TEXAS SECURITIES ACT

19.     The investment solicited by MMA and Moseley is a security under the Texas Securities Act. *See* TEXAS GOV'T CODE §§ 4001.001 *et seq.* Upon information and belief, it is an unregistered security and/or they are not registered to solicit and/or sell such securities.

20.     Additionally, MMA, with the aid of Moseley, offered and/or sold a security by means of untrue statements of material fact and/or omissions of material fact necessary in order for the statements made, in light of the circumstances under which they are made, to not be misleading.

21.     Pursuant to Section 4008.055 of the Texas Securities Act, Moseley is jointly and severally liable with MMA and to the same extent as MMA for violations of the Texas Securities Act.

22.     Plaintiff seeks recission relief under the Texas Securities Act, by which Plaintiff shall recover the consideration paid ($3 million), plus interest thereon, attorneys' fees and costs. Plaintiff further requests exemplary or punitive damages under the Texas Securities Act.

### ATTORNEYS' FEES AND INTEREST

23.     Plaintiff is entitled to recover reasonable attorney's fees from Defendants for all legal services performed by Plaintiff's attorneys in pursuit of the claims against Defendants pursuant to Chapter 38 of the TEXAS CIVIL PRACTICES & REMEDIES CODE and/or Chapter 4008 of the TEXAS GOV'T CODE.

24.     Plaintiff is entitled to recover prejudgment and post-judgment interest at the highest legal rate allowed by law.

5

Monson 026667

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 032

**CONDITIONS SATISFIED**

25.     Plaintiff has fully or substantially performed all acts necessary to perfect and establish all claims and causes of action asserted in this lawsuit.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, ACCESS RESTORATION SERVICES US, INC., respectfully requests that Defendants, McCLENNY MOSELEY & ASSOCIATES, PLLC and JOHN ZACHARY MOSELEY, be duly cited to appear and answer, and that Plaintiff have judgment against Defendants for:

(a)     Plaintiff's actual damages;

(b)     Recission of the investment agreement and recovery of the $3 million consideration under the Texas Securities Act;

(c)     Exemplary or punitive damages under the Texas Securities Act;

(d)     Prejudgment interest;

(e)     Post-judgment interest;

(f)     Reasonable attorneys' fees in the trial court and all appellate courts;

(g)     All costs of court in the trial court and all appellate courts;

(h)     Collection costs; and

(i)     All other relief to which Plaintiff may show itself justly entitled.

Monson 026668

Respectfully submitted,

ANDREWS MYERS, P.C.

By:     /s/ Lisa M. Norman
        LISA M. NORMAN
        Texas Bar No. 24037190
        lnorman@andrewsmyers.com
        COLBY M. BINFORD
        State Bar No. 24109645
        cbinford@andrewsmyers.com
        1885 Saint James Place, 15th Floor
        Houston, Texas 77056
        713-850-4200 – Telephone
        713-850-4211 – Facsimile

        ATTORNEYS FOR PLAINTIFF
        ACCESS RESTORATION SERVICES US,
        INC.

7

Monson 026669

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 034**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Norman on behalf of Lisa Norman
Bar No. 24037190
lnorman@andrewsmyers.com
Envelope ID: 74920622
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 4/24/2023 8:09 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Colby M.Binford | | CBinford@andrewsmyers.com | 4/21/2023 10:23:40 PM | SENT |
| Kathy Bocco | | kbocco@andrewsmyers.com | 4/21/2023 10:23:40 PM | SENT |
| Lisa MNorman | | lnorman@andrewsmyers.com | 4/21/2023 10:23:40 PM | SENT |

Monson 026670

4/26/2023 7:28 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 75063357
By: Rhonda Momon
Filed: 4/26/2023 7:28 PM

CAUSE NO. _____

| | | |
|---|---|---|
| GLOBAL ESTIMATING SERVICES, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| McCLENNY, MOSELEY | § | |
| & ASSOCIATES, PLLC | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Plaintiff, GLOBAL ESTIMATING SERVICES, INC. ("Plaintiff"), and files this its Original Petition against Defendant, McCLENNY, MOSELEY & ASSOCIATES, PLLC ("Defendant"), and would respectfully show the Court as follows:

### DISCOVERY CONTROL PLAN

1.      Discovery is intended to be conducted under Level 3 of Texas Rule of Civil Procedure 190.4.

### PARTIES

2.      Plaintiff, GLOBAL ESTIMATING SERVICES, INC., is a Delaware corporation, registered with the Texas Secretary of State to conduct business in Texas, with its principal place of business located in Montgomery County, Texas.

3.      Defendant, McCLENNY, MOSELEY & ASSOCIATES, PLLC, is a Texas limited liability company with its principal place of business located at 516 Heights Blvd., Houston, Texas 77007 and/or 1415 Louisiana St. #2900, Houston, Texas 77002. Defendant may be served with process by serving its registered agent for service of process as follows:

CT Corporation System
1999 Bryan Street, Suite 900
Dallas, Texas 75201

or by serving any member anywhere he may be found.

1

Monson 026671

JURISDICTION & VENUE

4.      Venue is proper in Harris County, Texas because Defendant's principal office is located in Harris County, Texas. Venue is proper in Harris County, Texas, because all or a substantial part of the events giving rise to Plaintiff's claim occurred in Harris County, Texas.

5.      The Court has jurisdiction over the controversy because the damages sought are within the jurisdictional limits of this Court. Plaintiff seeks monetary relief over $1,000,000.00, excluding interest, attorneys' fees and costs. TEX. R. CIV. P. 47(c)(4).

6.      The Court has jurisdiction over Defendant because it is registered to conduct business in Texas and does conduct business in Texas.

BACKGROUND

7.      Plaintiff was hired by Defendant to provide field inspection services for residential and commercial property losses suffered by certain of Defendant's clients as a result of hail, fire, water intrusion, collapse, wind damage and/or flood damage. The scope of the work Defendant hired Plaintiff to perform included providing written estimates for the construction repair work and/or restoration work for the subject properties.

8.      Plaintiff invoiced Defendant for each property on which it provided the above-referenced services. While Defendant paid some of the invoices, it has since fallen woefully behind on payments due and owing to Plaintiff.

9.      Plaintiff has provided written demand to Defendant, as well as an accounts receivable report for open invoices. Some of the outstanding invoices are more than a year old, and the current balance due and owing to Plaintiff is $9,865,862.99.

10.     Simply put, Defendant requested the services, Plaintiff provided the services, and Defendant has failed to pay for the services Plaintiff provided. Such failures on Defendant's part

2

Monson 026672

constitute a breach of the parties' agreement, for which Plaintiff seeks recovery in this lawsuit.

### FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT

11.     Defendant requested that Plaintiff provide inspection and estimating services for specific properties owned and/or leased by certain of Defendant's clients. Defendant agreed to pay Plaintiff for its services pursuant to a specific payment schedule. Plaintiff performed, or in the alternative substantially performed, all of its obligations under the Agreement with Defendant, including, but not limited to, providing Defendant with the requested written repair and/or remediation estimates.

12.     Defendant materially breached the parties' agreement by failing to pay Plaintiff for the services Plaintiff provided, for which Plaintiff seeks to recover its actual damages as reflected on the invoices totaling $9,865,862.99, plus attorneys' fees, interest and costs.

### SECOND CAUSE OF ACTION:
### QUANTUM MERUIT

13.     Alternatively, Plaintiff provided services to Defendant which were requested by Defendant and under circumstances which Defendant knew, or reasonably should have known, that Plaintiff expected payment, without making payment therefore.

14.     Defendant is liable to Plaintiff in the amount of $9,865,862.99, the reasonable value of the services furnished to Defendant, for which Plaintiff seeks recovery in this lawsuit.

### ATTORNEYS' FEES AND INTEREST

15.     Plaintiff is entitled to recover reasonable attorney's fees from Defendant pursuant to Chapter 38 of the TEXAS CIVIL PRACTICES & REMEDIES CODE.

16.     Plaintiff is entitled to recover prejudgment and post-judgment interest at the highest legal rate allowed by law.

Monson 026673

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 1 - Page 038

## CONDITIONS SATISFIED

17.    Plaintiff has fully or substantially performed all acts necessary to perfect and establish all claims and causes of action asserted in this lawsuit.

## PRAYER

WHEREFORE, Plaintiff, GLOBAL ESTIMATING SERVICES, INC., respectfully requests that Defendant, McCLENNY, MOSELEY & ASSOCIATES, PLLC, be duly cited to appear and answer, and that Plaintiff have judgment against Defendant for:

(a)    Plaintiff's actual damages;

(b)    Prejudgment interest;

(c)    Post-judgment interest;

(d)    Reasonable attorneys' fees in the trial court and all appellate courts;

(e)    All costs of court in the trial court and all appellate courts;

(f)    Collection costs; and

(g)    All other relief to which Plaintiff may show itself justly entitled.


Respectfully submitted,

ANDREWS MYERS, P.C.

By:    /s/ Lisa M. Norman
       LISA M. NORMAN
       Texas Bar No. 24037190
       lnorman@andrewsmyers.com
       COLBY M. BINFORD
       Texas Bar No. 24109645
       cbinford@andrewsmyers.com
       1885 Saint James Place, 15th Floor
       Houston, Texas 77056
       713-850-4200 – Telephone
       713-850-4211 – Facsimile

ATTORNEYS FOR PLAINTIFF
GLOBAL ESTIMATING SERVICES, INC.

4

Monson 026674

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Norman on behalf of Lisa Norman
Bar No. 24037190
lnorman@andrewsmyers.com
Envelope ID: 75063357
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 4/27/2023 8:14 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Colby M.Binford | | CBinford@andrewsmyers.com | 4/26/2023 7:28:58 PM | SENT |
| Lisa MNorman | | lnorman@andrewsmyers.com | 4/26/2023 7:28:58 PM | SENT |
| Kathy Bocco | | kbocco@andrewsmyers.com | 4/26/2023 7:28:58 PM | SENT |

Monson 026675

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 001**

 Outlook

---

## RE: MMA fee issues

---

**From** Michael North <Michael_North@laed.uscourts.gov>

**Date** Fri 4/5/2024 11:27 AM

**To** Engelhardt, Leah Nunn <engelhardt@chaffe.com>; dstrauss@smd-law.com <dstrauss@smd-law.com>; Matthew Monson <matthew@monsonfirm.com>; Jim Nieset <jnieset@phjlaw.com>

---

📎 1 attachment (146 KB)

Ricks Order and Recommendation.pdf;

Monson 026676

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 002**

All,

Please see attached, which was issued today.  Thanks.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL B. NORTH
Chief United States Magistrate Judge
United States District Court
Eastern District of Louisiana
(504) 589-7610

---

**From:** Michael North
**Sent:** Monday, April 1, 2024 11:42 AM
**To:** Engelhardt, Leah Nunn <engelhardt@chaffe.com>; dstrauss@smd-law.com; Matthew Monson <matthew@monsonfirm.com>; Jim Nieset <jnieset@phjlaw.com>
**Subject:** MMA fee issues

All,

In response to orders I issued in Ricks v. Imperial Fire (23-2844) that MMA produce to the Court a list of every pending case in this district in which it intended to seek a fee, counsel for MMA filed responses containing the following statements:

"With respect to the second part of the Court's Order, MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs."  Rec. doc. 47).

"MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees. As MMA previously explained in response to the Court's March 6, 2024 Order, MMA does not intend to intervene in any cases pending in this Court, so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees."  (Rec. doc. 50).

While the firm maintains that it may sue certain successor law firms for breach of contract (those that had fee-sharing agreements with MMA originally), I am hopeful these affirmative statements provide everything needed to satisfy settling defendants that they can cut checks without listing MMA as a payee.

I'd ask that you share this info with your clients and other members of the defense bar as you see fit.  Thanks.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL B. NORTH
Chief United States Magistrate Judge
United States District Court
Eastern District of Louisiana
(504) 589-7610

Monson 026677

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 003**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STEPHEN RICKS** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 23-2844** |
| **IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY** | **SECTION: "R" (5)** |

## ORDER AND RECOMMENDATION

Pending before the Court pursuant to an order of reference from the District Judge are two motions: a Motion for In Camera Approval and Allocation of Fees and Expenses and a motion to seal that motion (rec. docs. 17 and 17-3). In connection with Plaintiff's request for oral argument on those motions, this Court issued an Order on January 26, 2024 for oral argument. (Rec. doc. 25). That Order directed that the principal of McClenny, Moseley & Associates ("MMA"), Zach Moseley, and/or MMA's counsel appear and show cause why, by virtue of the numerous established instances of its misconduct in this District (as catalogued in the Order and set forth in part below), MMA has not forfeited the right to recover fees and/or costs from its former clients who settle their claims pro se or with the assistance of new counsel. (*Id.*). It was the Court's stated intention to address this question in the first instance (1) on a docket-wide basis and (2) pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and/or the inherent authority of the Court.

The show-cause hearing was set for February 21, 2024. The aforementioned Order provided that MMA could file a brief in support of its position no later than February 14, 2024, which it did. (Rec. doc. 36). The Court further ordered that, along with that brief, MMA was to produce to the Court all documentation associated with its prior representation of the plaintiff in this case, Stephen Ricks, including, but not limited to, any contract for

Monson 026678

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 004

representation and demand letter(s) sent to Ricks' insurer. (*Id.*). In addition, MMA was to provide documentation of all costs expended in this matter and explain to the Court in its brief how this case was obtained by the firm. (*Id.*).

In its responsive brief and at the show-cause hearing, MMA argued that, because it was not seeking a fee or reimbursement of costs in <u>this</u> case, there was no live case or controversy remaining in the case, such that proceeding with a hearing to determine MMA's rights to recover fees and/or costs in other cases pending in this District would violate Article III of the United States Constitution: "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold [parties] accountable for legal infractions." (Rec. doc. 39)(quoting *TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 423 (2021)).

At the show-cause hearing, the Court indicated its tendency to agree with MMA's standing argument and indicated its hesitancy to undertake a docket-wide inquiry in this case for the reasons advanced by MMA in its brief. At that point, counsel for Plaintiff,[1] for the first time, suggested that, because two of MMA's <u>lenders</u> (Equal Access Justice Fund, LP and EAJF ESQ FUND, LP (hereinafter, the "Funds")) had issued "lien letters" to their firm in every case pending in this District in which MMA was former counsel, a case or controversy persisted in this case, based on the idea that MMA's voluntary relinquishment of the right to recover fees in this case could be construed as a breach of contract by MMA vis-à-vis the Funds, thus exposing Plaintiff's counsel to potential liability to the Funds.

The Court then ordered Plaintiff's counsel to file a supplemental memorandum fully briefing this somewhat novel argument, which they ultimately filed on February 28, 2024.

---

[1] Plaintiff is represented by the law firm Daly & Black.

Monson 026679

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 005**

(Rec. doc. 45).  Upon receipt of that brief, the Court ordered MMA to file a responsive brief and to produce to the Court a "complete and comprehensive list of every case currently pending in this District in which it intends to seek attorneys' fees and/or costs."  (Rec. doc. 46).

On March 15, 2024, MMA filed its response.  (Rec. doc. 47).  As to the standing argument advanced by Plaintiff's counsel, MMA bolstered its argument that no case or controversy exists here by attaching as an exhibit a letter from counsel for the Funds to MMA's counsel "waiv[ing] and release[ing] their respective security interest in attorneys' fees, if any, owed, due, or owing" to MMA arising out of this matter only.  (Rec. doc. 47-1).

MMA went on to represent that "[w]ith respect to the second part of the Court's Order [supplying the Court with a list of cases pending in this District in which MMA will seek a fee], MMA does not intend to intervene in any cases pending in this Court to seek attorneys' fees or costs."  (Rec. doc. 47) (emphasis added).

The undersigned initially mis-read this last statement as applying to the *Ricks* matter only.  This in turn led the undersigned to issue a second order suggesting that MMA was in violation of the March 6 Order for failing to supply the Court with the list of cases pending in this District in which it intended to seek a fee and ordering the firm to submit such a list within five days.  (Rec. doc. 49).

While MMA had not produced such a list, it was not in violation of the Court's March 6 Order because it had informed the Court that it did not intend to intervene in any pending cases to seeks fees or costs.  In its response to this second order, MMA reiterated that

> as it stated in its March 15 pleading, MMA maintains that there are no EDLA cases in which it intends to intervene or file liens to recover attorney's fees.  As MMA previously explained in response to the Court's March 6, 2024 Order, MMA does not

3

Monson 026680

intend to intervene in any cases pending in this Court, so there is no list to provide reflecting pending EDLA cases in which MMA intends to seek attorney's fees.

(Rec. doc. 50).

The MMA response went on to note that

MMA is considering filing lawsuits against Daly & Black and Galindo Law, which MMA believes have breached agreements with MMA and which have taken action that may give rise to various causes of action for relief related to Daly & Black's and Galindo Law's handling of Hurricane Ida claims for former MMA clients.

(*Id.*).  The firm then attached a list of cases that appear to be those in which Daly & Black and/or Galindo Law[2] are involved in this District.  (*Id.*).

The Court finds that the multiple affirmative statements in multiple briefs filed with this Court that it would not seek to recover fees and/or costs from cases pending here constitutes a voluntary and knowing waiver of any right to do so.

As the Court noted in its January 26 Order initiating the proceedings described above, the intention of the Court in initiating those proceedings was to address a circumstance in this District that has hampered efficient resolution of insureds' claims and taxed the resources of the Court – certain insurers' insistence that settlement checks include MMA as a payee based upon their status as former counsel for settling insureds.  The refusal to issue settlement checks without MMA's name as a payee has (1) delayed payments to insureds even after settlement, (2) required unnecessary motion practice seeking court orders that insurers issue checks omitting MMA as a payee, and (3) caused the judges of this Court,

---

[2]  The potential claims against Galindo Law are said to be based on the fact that "Galindo Law entered into joint representation agreements with MMA in many cases," which MMA apparently believes Galindo Law may have breached.  (*Id.*).

4

Monson 026681

AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 2 - Page 007

including this one, to make inquiries of MMA's counsel on a case-by-case basis whether MMA intended to seek a fee in individual cases. This entire process – caused directly by MMA's malfeasance in this District[3] – has been a tremendous drain upon the bar and this Court, and a waste of valuable resources, the most important of which is time. Considering that hundreds of cases involving former MMA clients remain open in this District, continuing on this path is simply untenable.

The Court now finds, based upon MMA's multiple representations that it does not intend to seek fees or costs <u>in any case now pending in this District</u>, that this tortured process can and should come to an end.

It matters not to the resolution of Hurricane Ida cases in this District that one law firm might sue another law firm for breach of a contract between them. That potential is of no moment to either insured <u>or insurer</u>. It is a matter strictly between the various law firms. It follows then that there is no basis, given MMA's affirmative statement of its intention to walk away from fees and costs from cases pending here, for settling insurers to continue to insist on including that firm on settlement checks.

Similarly, the fact that the Funds have sent "lien letters" to various law firms representing former MMA clients suggesting they have a "perfected security interest in and to the McClenny Moseley & Associates, PLLC, Law Firm Proceeds"[4] in cases involving those clients is not a matter impacting the insureds or insurers. Whatever dispute arises out of these claims to fees by the Funds will be a dispute between the Funds and a law firm over

---

[3] *See Franatovich v. Allied Trust Ins. Co.*, Civ. A. No. 22-2552, 2023 WL 7005861 (E.D. La. Mar. 16, 2023).
[4] (Rec. doc. 45-1).

5

Monson 026682

some portion of fees received by that law firm. That dispute will not impact the actual parties to the litigation.

Based upon all the foregoing, the Court finds that MMA has knowingly and completely waived its rights to intervene or otherwise seek to recover fees and/or costs in this or any other lawsuit pending in this District. This finding is without prejudice to MMA's or the Funds' right to bring whatever claims may exist for breach of contract (or under any other theory) against MMA's successor law firms. But the Court's finding here does act to remove as an impediment to settlement and payment of settlement proceeds the possibility that MMA could, at some point in the future, seek to intervene for fees and/or costs in any case pending here. That possibility is now eliminated.

The Court further finds that this case, which has been settled between the parties, should be dismissed as such. No further case or controversy exists between the parties. The pending motions – a Motion for In Camera Approval and Allocation of Fees and Expenses and a Motion to Seal that motion (rec. docs. 17 and 17-3) – should be dismissed as moot, given that both MMA and the Funds have waived their respective rights to any recovery in this case. Accordingly,

**IT IS ORDERED** that the Motion for In Camera Approval and Allocation of Fees and Expenses and the Motion to Seal that motion (rec. docs. 17 and 17-3) be **DISMISSED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that the District Judge enter a 60-day order of dismissal indicating that the case has been resolved by settlement.

6

Monson 026683

**NOTICE OF RIGHT TO OBJECT AS TO THE RECOMMENDATION FOR DISMISSAL**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___5th___ day of _____ April _____, 2024.

_____
MICHAEL B. NORTH
CHIEF UNITED STATES MAGISTRATE JUDGE

7

Monson 026684

# AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 3 · Page 001

Apr 17, 2024 at 4:21 PM

Call when you have a minute pls

Jul 15, 2024 at 5:19 PM

 **4-24-AP-03127_DocketEntry_07-10-2024_23.pdf**
PDF Document · 207 KB

Dec 6, 2024 at 6:59 PM

Ok. Just landed in NOLA.

Got a second?

K. Call when it works. Won't take long

Dec 18, 2024 at 5:19 PM

MMA just sued Hair Shunnarah in the bankruptcy.

The latest. They're about the sixth form they've sued

Dec 19, 2024 at 11:07 AM

**Lawsuit Against Law Firm Exposes Fee Sharing Agreement for Storm Claims**
claimsjournal.com

This was inspired by your original reporting.

Meant for someone else?

Yes sorry

Dec 19, 2024 at 6:07 PM

 **FILE_3773.pdf**
PDF Document · 388 KB

Judge North 003

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 4 - Page 001**

 Outlook

---

### Re: Pending case with no answer filed

---

**From** Michael North <Michael_North@laed.uscourts.gov>

**Date**  Wed 12/18/2024 12:31 PM

**To**      Matthew Monson <matthew@monsonfirm.com>

It is the former for sure. Not sure about the latter.
Sent from my iPhone

> On Dec 18, 2024, at 12:16 PM, Matthew Monson <matthew@monsonfirm.com> wrote:

**CAUTION - EXTERNAL:**

Monson 026685

Thanks for the heads up.

We did have case no. 23-cv-415 dismissed.  We did not settle.  Southern Vanguard is our client who writes business in Texas.  They do not write business in Louisiana and did not issue a policy to the plaintiff.

In case no. 23-cv-4526, it does not appear that Southern Vanguard was ever served.  We are reaching out to them today to determine whether a policy ever existed.  Either way, we will be happy to file the appropriate responsive pleadings.

I wonder if this is another Galindo/MMA/Velawcity special.

All the best,
**MATTHEW MONSON, ESQ.**
O: 985.778.0678 D:  985.778.0680 M: 504.289.4939
Matthew@MonsonFirm.com
<image001.png>

---

**From:** Michael North <Michael_North@laed.uscourts.gov>
**Date:** Wednesday, December 18, 2024 at 11:36 AM
**To:** Matthew Monson <matthew@monsonfirm.com>
**Subject:** Pending case with no answer filed

Matt – can you look into this and let me know what you find?  Open case against Southern Vanguard (23-cv-4526) with no answer filed.  Looks like a similar case was settled? (23-cv-4515).  Thanks.

**********************************
MICHAEL B. NORTH
Chief United States Magistrate Judge
United States District Court
Eastern District of Louisiana
(504) 589-7610

Monson 026686

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 4 - Page 003**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Monson 026687

# AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 5 - Page 001

Apr 17, 2024 at 4:21 PM

Call when you have a minute pls

Jul 15, 2024 at 5:19 PM

 **4-24-AP-03127_DocketEntry_07-10-2024_23.pdf**
PDF Document · 207 KB

Dec 6, 2024 at 6:59 PM

Ok. Just landed in NOLA.

Got a second?

K. Call when it works. Won't take long

Dec 18, 2024 at 5:19 PM

MMA just sued Hair Shunnarah in the bankruptcy.

The latest. They're about the sixth form they've sued

Dec 19, 2024 at 11:07 AM

**Lawsuit Against Law Firm Exposes Fee Sharing Agreement for Storm Claims**
claimsjournal.com

This was inspired by your original reporting.

Meant for someone else?

Yes sorry

Dec 19, 2024 at 6:07 PM

 **FILE_3773.pdf**
PDF Document · 388 KB

Judge North 003

**AFFIDAVIT OF MATTHEW D. MONSON, ESQ. EXHIBIT 5 - Page 002**

Thanks.

Feb 28, 2025 at 9:38 AM

Told you.

 **Galindo Tarver Rule to Show Cause.pdf**
PDF Document · 260 KB

Mon, Feb 2 at 6:01 PM

Pls call me asap

Who is this

Read 2/2/26

Judge North 004