UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

IN RE:                                      )
                                            ) CIVIL ACTION
ZACH MOSELEY                                ) NO. 2:23-MC-49
                                            )
_____)

HEARING ON APRIL 26, 2023
OFFICIAL TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KATHLEEN KAY
UNITED STATES MAGISTRATE DISTRICT JUDGE
LAKE CHARLES, LOUISIANA

APPEARANCES:
    FOR ZACH MOSELEY:

    GWYNETH A. O'NEILL
    SCHONEKAS EVANS ET AL
    909 POYDRAS STREET STE 1600
    NEW ORLEANS, LA 70112

Produced by mechanical stenography, transcript produced by computer.

JODI D. TERRY, RPR
FEDERAL OFFICIAL COURT REPORTER
300 FANNIN STREET, ROOM 4209
SHREVEPORT, LOUISIANA 71101
(318) 934-4755

(Court called to order, with all parties present at 2:30 p.m.)

THE COURT:  All right.  So our final matter is in re Zach Moseley, Number 23-MC-49.  Could I have appearances, please?

MR. MOSELEY:  Zach Moseley on behalf of Zach Moseley.

THE COURT:  Okay.  Are you going to be representing yourself in this, Mr. Moseley?

MS. O'NEILL:  Your Honor, Gwyneth O'Neill representing Mr. Moseley on behalf of MMA.

THE COURT:  Okay.  Are you enrolling?

MS. O'NEILL:  Yes, Your Honor.

THE COURT:  All right.  So this matter was initiated by a show cause order issued by Judge Cain, since referred to me for handling.  That order states that Zach Moseley, founding and managing partner of McClenney Moseley & Associates, MMA Law Firm, was to appear on April 26th, 2023, at 2:30 in the -- here.  It was supposed to be courtroom four, but that was changed to courtroom two to provide the status of the agreement between MMA and the Laborde Earles Law Firm and to produce to the Court any and all consulting or professional agreements between MMA and any suspended attorney.

Okay.  So Mr. Moseley, what do you have in response

to that?

MR. MOSELEY: I am here to give a verbal update about cases that we have in the Western District that have been able to be associated with Laborde Earles Law Firm and as far as producing any consulting arrangement with the suspended attorney there is none.

THE COURT: Okay. Well, let's put him under oath, please.

CLERK: Raise your right hand.

(Mr. Moseley sworn.)

THE COURT: Okay. You want to restate what you just said?

MR. MOSELEY: Yes, Your Honor. My firm has been able to associate a number of cases with the Laborde Earles Law Firm as lead counsel in the Western District. And as far as any consulting arrangement goes with any suspended attorneys or former employees of MMA there is none.

THE COURT: What about any fee sharing arrangement between MMA and the Laborde Earles Law Firm?

MR. MOSELEY: We just have an acknowledgement that they will not object to a certain amount of the fee being split with the MMA Law Firm for cases that have a certain amount of work being concluded.

MS. O'NEILL: And, Judge, if I could provide clarity, just that I think what Mr. Moseley is trying to say

is that that would be assessed on a quantitative basis.

MR. MOSELEY: We have a draft of the arrangement that can be produced to the Court. It has not been signed. It was waiting for the blessing of this Court and Chuck Plattsmier of the ODC's office.

THE COURT: Okay. Well, I would suggest that you submit it to receive that blessing in some format.

Okay. So let's just kind of circle back here and recap where we are. This proceeding basically is a corollary to activity that began in October of 2022 when Judge Cain -- well, I mean, in August of 2022 when the Western District of Louisiana was inundated with I think we've determined, 1600 filings that were instituted by the MMA Law Firm. And as a result of that, or in response to that -- you can sit down if you want, Mr. Moseley. You don't have to stand.

In response to that, and as well as in response to postings that we saw on social media where the MMA firm basically was spiking the football and gleefully discussing how it had brought the Western District of Louisiana down to its knees through its actions, Judge Cain understandably became very concerned about what was going on.

Let me find a representative case here. So on October 20th of 2022 there was a show cause hearing that was held before Judge Cain. It actually was in relation to two

specific cases, I believe, but I really was not involved in that so I can't speak to exactly how it came about, but I think the word was put out there that the judge wanted to have some questions answered about what was going on with these MMA cases and how we, as the Western District of Louisiana, were going to respond to the impact that these filings had on our docket.

Mr. Moseley, were you there for that?

MR. MOSELEY:  No, Your Honor.

THE COURT:  Have you read the transcript of that proceeding?

MR. MOSELEY:  I have read bits and pieces of it.

THE COURT:  All right.  Well, I think now is probably a good time for you to read the whole thing and I am going to order you to do that by the end of the day and I would like to receive certification from you tomorrow that you have done that.

I believe, I am fairly certain that Judge Cain on that day admonished probably Mr. Huye, because I think he was probably the one that was here, but did it to him as the representative of MMA that you guys needed to clean up this mess or assist in the clean up of this mess that you created over here.  And over the course of the last several months I believe that there have been efforts made by various plaintiffs' firms to come with -- to come to some sort of

arrangement with MMA so that there could be a smooth transition of the cases to -- well, okay. Let me back up again. Let's see, that show cause hearing was on October 20th of 2022. On October 21st of 2022, Judge Cain stayed all of the cases while we tried to come up with a system for handling these. They were removed from the normal case management order in place for all of the other hurricane cases that we've had, a case management system that has been very successful. The MMA cases, however, were removed from that because they just -- they -- there was just a lot of concern and it was all expressed, I think, at that hearing and so that is why you are being ordered to read that transcript.

So in the ensuing months, though, it became apparent to Judge Cain, I believe -- I am not speaking for him, I am just operating off what is in the record. But I think it became apparent to him that things weren't getting easier, they were getting worse, and there were reports of various and sundry items of nefarious behavior by MMA representatives and attorneys with MMA so that on March 4th of 2023 he issued a memorandum order suspending MMA, and anyone affiliated with the firm, including Mr. Huye, Mr. Reynaud, Mr. Snowden, Mr. Gardner, John Moseley and James McClenney from practicing in the Western District of Louisiana for a period of 90 days. That was on March 4th of

2023.

I understand that there were continuing efforts, though, being made by various and sundry law firms to, again, try to work out a smooth transition from one firm to the other so that these plaintiffs' claims could be resolved, but that there was interference by MMA and its agents in the form of continuing to make contact with attorneys -- or, excuse me, with persons who had actually even already retained new counsel and attempting to persuade plaintiffs to go with one firm versus another firm or to do this, that, or the other, the particulars of which I think are varied depending on who it was.

But I think what the purpose of this hearing was is that Judge Cain was interested in understanding or making certain, I guess I should say, that there was an appropriate -- there was no inappropriate conduct or contact being made or -- as between the Laborde Earles Law Firm and MMA with respect to their fee sharing and so forth.

So, Mr. Moseley, you had indicated that you had to go to your car to get some stuff?

MR. MOSELEY:  Yes, Your Honor.  I want to acknowledge that this has been a mess and I take full responsibility for my actions in that.  I looked to the Court to give me guidance on how to transition these cases. It is more than just the complication of the Western

District.  We tried to create a solution to getting counsels associated across the State of Louisiana, but sometimes the Western and Eastern Districts didn't agree with what needed to happen, and then also other law firms were being retained that we didn't know about so we were sending communications out that we believed were okay, but then it turns out they had already, you know, retained another lawyer.

We believe that we have a system that can handle this, but with 15,000 plaintiffs there will be some carryover where mistakes happen and clients receive communications when they've already retained an attorney.  And it is nothing nefarious.  It is just with the sheer volume of this project there is going to be some overlap in representations.

THE COURT:  Well, let me just tell you this right now.  You need to unplug that computer.  Unplug it.  No more robotexts.  No more robocalls.  No more robo-messaging.  MMA needs to not contact any former client in the Western District of Louisiana as of now either directly or through any agent, whether that be a consulting service, whether it be a fee sharing arrangement, whether it be a process server, anybody.  Nobody acting on behalf of MMA is to contact any former plaintiff -- or any former client in any case in the Western District of Louisiana.  Do you understand that?

MR. MOSELEY: Yes, Your Honor. And when you say former client, do you mean ones that have formally withdrawn from our firm?

THE COURT: Yeah, no. You make a very good point. I mean anyone -- any person on whose behalf you filed lawsuits in the Western District of Louisiana. You may not contact them. All right? I don't trust MMA to be giving these people appropriate information, which is why you got suspended in the first place. And the problem that we're having, of course, is that it appears as though or it sounds as though there have been contacts made trying to persuade individual persons to go one way or the other and at this point in this process our overarching concern is that recommendations are being made not to help the Western District of Louisiana resolve this issue, but rather to help MMA or someone formally associated with MMA to get money. Okay?

MR. MOSELEY: I recognize that concern, Your Honor. We tried to approach the Court to get lawyers in this local area that they would approve to associate with.

THE COURT: Why do you even have to be a part of this process? Why do you even have to say anything? I mean, you have already screwed it up so badly and by continuing to communicate with these people you are only making it worse. You are making it more confusing for them,

I think, you know.  Now, let me say this, too.  Any order I make today you can appeal it to Judge Cain, because I am only a magistrate judge.  I am not a district judge.  But -- and I probably should ask if anybody wants to speak to this topic because we do have attorneys here who have been part of, you know, what we're talking about.

But at any rate, I want to ask you this, too.  Has there been any discussion by MMA or anyone acting on behalf of MMA with any other lawyers whether they be local non-local, whatever, about making payments from proceeds and settlement of any Western District case to any family members of MMA attorneys, former attorneys, associates, or anything of that nature?

MR. MOSELEY:  Not in the sense of payment.  I believe that some firms have inquired as to whether or not Claude, Grant, Cameron, Katie, the attorneys suspended in Judge Cain's order, could work at their law firm and help with the transition of those files.  So another plaintiff's firm hired my old attorneys because those attorneys are familiar with the data and the case sets for the clients.

THE COURT:  What about spouses of any attorneys?

MR. MOSELEY:  Not to my knowledge, Your Honor.

THE COURT:  Okay.  All right.

MR. MOSELEY:  I think another point -- issue that I am having, too, is because MMA sourced out counsels for

all of its former attorneys, I have essentially been conflicted out from hiring a new ethics attorney as my current one was just withdrawn today.  It is my understanding I have a duty to assist in helping these people acquire new Louisiana counsel because I can't represent them anymore.  Is that not the Court's understanding?  And I would like guidance on what to do.

THE COURT:  Well, if I thought for a minute you were actually trying to help these people I would not have a problem with it.  But the impression I get is all you are worried about is getting money for you.  And so you're interfering with the ability of the people who are trying to pick up your mess to represent these people when -- well, let me just put a broad question out there.  Is there any attorney out here who has a former MMA client who has been contacted by MMA, the client has being contacted by MMA since you formally enrolled as counsel for them?

MR. MARKS:  Yes, Your Honor, by the dozens.

THE COURT:  All right.  Come up.  I want the short version, though.

MS. O'NEILL:  And, Judge, just so it is clear, because I -- I do think there is a lot of different buckets of these cases, can we just be sure that to the extent that Mr. Marks is going to offer information that we are discussing about cases in this district as opposed to things

12

that may happen outside of this district for purposes of the show cause order today?

THE COURT: I am only interested in things -- well, I don't know. I don't know. See, here is what my problem is, Ms. O'Neill. I am trying to fashion an order that stops MMA from interfering with our ability to see these cases through to the end. Okay? The problem when dealing with an entity such as MMA is whatever I say they are going to try to do an end run about it, figure out, well, she didn't say this, you know, sort of like when Mr. Huye was up here. Well, they didn't tell us not to. You know, it is like the apocalypse, the zombie apocalypse, you know. It is, like, there is -- I can't cover all bases. So what I need to do is hear instances of what is going on so I can say, don't do that. Okay?

MS. O'NEILL: Yes, Your Honor.

THE COURT: All right. So that is what I want to hear.

MR. MARKS: All right, Judge. I am going to try to give you the short version, but I think, as you know -- by the way, Austin Marks representing Morris Bart. We have represented now hundreds of former McClenney Moseley clients and this is across both the Eastern, Western, and Middle Districts of this state. To answer your question on point as far as communication from McClenney Moseley over the last

few months, I suppose, just so you know, we are in the process of terms of when a client signs up with us we have an attorney who actually explains the contract, explains the fees and explains the costs and what the process will be. On that same day we will contact the client in terms of whoever will be handling that case moving forward, the handling attorney, that is. We'll tell them that we have discharged McClenney Moseley, that the client has, in fact, signed a discharge letter that we then forward to McClenney Moseley. We do that on the same day.

There are many instances across the entire state where McClenney Moseley continues to reach out to those clients with their text messages and their robotexts and their robo e-mails as you are fully aware.

THE COURT: So what are the substance of -- what is the substance of these contacts?

MR. MARKS: So it really runs the gamut. I have got many different examples, and I don't know if we want to get into every single one, but the most recent one --

THE COURT: No, I really don't.

MR. MARKS: The most recent one was this Easter Sunday email that went out from McClenney Moseley and a follow-up email that came directly from Laborde Earles. So I am sure Your Honor is familiar with the letter from the special master that went out to all of the Western District

clients regarding McClenney Moseley's association with Laborde Earles. McClenney Moseley on Easter Sunday sent out an email to dozens of my clients who we had signed up over the last several weeks, who McClenney Moseley would have received a discharge letter from the client saying that they would no longer want McClenney Moseley to represent them. On Easter Sunday those clients received an email from AssureSign, so it did not necessary list McClenney Moseley.

THE COURT: AssureSign --

MR. MARKS: Yes, Your Honor.

THE COURT: -- was the platform?

MR. MARKS: That is the email --

THE COURT: The application?

MR. MARKS: It happened in Semmes, which we had a hearing on this morning, Your Honor. Just for reference it is Exhibit 5 to our opposition in the Semmes matter, which is 2:22-CV-03494.

So in this instance McClenney Moseley would have received a discharge letter from our firm and from Mr. Semmes, signed himself. Thereafter on Easter Sunday -- actually, this one is on Monday, April 10th. McClenney Moseley sent an email from Smartadvocate@MMA-LLC.com with your subject, your storm damage claim, and then file number 2:22-114 action needed. Do you want me to read out the whole thing or give you the --

THE COURT: Tell me again where it is, what docket number?

MR. MARKS: It would have been in our opposition.

THE COURT: To?

MR. MARKS: To the Semmes intervention.

THE COURT: Okay. That is 22-3494?

MR. MARKS: It is document 22. So it is 22-5. It is Exhibit 5.

THE COURT: Okay. Attachment 5 to document 22?

MR. MARKS: Yes, 22-5.

So it says, Dear Jacob Semmes, we have sent --

THE COURT: I am looking at it now.

MR. MARKS: Okay.

THE COURT: It is -- well, it has got Mc -- MMA label on it, but it is from admin -- admin SmartAdvocate@MMA-PLLC.com to JSemmes@hotmail. Okay. I am with you.

MR. MARKS: And then if you will just skip to that middle chunk of e-mails this part on the document specifically relates to the lawsuit we filed on behalf against your insurance company for your storm damages. After filing this lawsuit you requested that our firm disengage from representing you in this matter. Since the lawsuit was filed our firm must take additional action in the case to either protect your rights so you can continue

16

pursuing your claim or dismiss the case in its entirety, which will result in you losing your rights to continue pursuing your claim for damages.

Now, I don't know how confusing that would read to someone who has no idea what is going on with their case because what you didn't hear from Mr. Semmes earlier today who was here, that he had not spoken to a human being from McClenney Moseley for the entirety of his representation.

THE COURT:  Yeah.  Okay.  Yeah, this is the kind of stuff that has got to stop as of today.  I don't see really much point in continuing on to give me other examples of what they have done in the past.

MR. MARKS:  Sure.

THE COURT:  However, you and anyone else is free to notify me if there is any similar activity after today, okay?

MR. MARKS:  Sure, Your Honor.  I mean, I guess if I could just add two pieces of information.  You can tell me to stop if you want to, but --

THE COURT:  Okay.

MR. MARKS:  -- many of these emails from McClenney Moseley were followed up by an email from Laborde Earles saying we are ready to take over the handling of your case, and those were my clients that were being directly solicited by Laborde Earles.

THE COURT: Is Laborde Earles here?

All right. You are not.

(Hand raised.)

THE COURT: Okay. I have to believe that Laborde Earles knows that they are not to contact persons who are represented by other counsel? Is that yes?

MR. EARLES: Yes, Your Honor.

THE COURT: Could you identify yourself, please?

THE WITNESS: Yes, Your Honor. Derrick Earles on behalf of Laborde Earles Law Firm.

THE COURT: Okay.

MR. EARLES: Also, I don't know if this is the proper time, Your Honor, but Mr. Marks' facts are not correct.

THE COURT: Okay. Well, I am not here to have a discussion today about whether his facts are correct versus yours. As of this moment, as far as I know, you're not in -- well, I don't know if you are in any trouble or not, to be perfectly honest. I think this notion -- that it has been proven that the notion that having MMA involved in any process of trying to transition a client from one attorney to the other needs to stop because I think MMA, as evidenced by this email, is using that as an opportunity to contact the client again. And that is what needs to stop. We can't trust MMA to do anything that will help us get these cases

18

through to the end of the day -- if you would come forward, please, very quickly.

All right. So I am not going to ask you what specifically was misstated just now. I just want to ask you, how many cases have you taken, roughly, in the Western District of Louisiana since -- taken over from MMA?

MR. EARLES: Roughly 400.

THE COURT: Okay. Do you have any fee sharing arrangement with MMA?

MR. EARLES: No, Your Honor. And I was going to ask to address the Court to clear up several things that Mr. Moseley stated and Mr. Marks stated that may help the Court clarify things.

THE COURT: All right.

MR. EARLES: The first thing, Your Honor, Laborde Earles has not directly communicated with any of Marks Bart's clients. We have spoken to Mr. Bart himself. We have spoken to Mr. Marks. That letter was sent -- MMA sent that letter from MMA to their clients supposedly unaware that Mr. Marks had assumed representation of him. Then sent a letter on my firm's letterhead to those clients. That did not come from me or my firm in any way.

To clarify some of the statements made by Mr. Moseley earlier, I want the Court to understand and to know that Laborde Earles is not associated or affiliated with MMA in

any way.

THE COURT:  And I would hope that it would not allow MMA to speak for it.

MR. EARLES:  No, ma'am.  No, ma'am.

THE COURT:  And I -- your assurance that that is not going to happen --

MR. EARLES:  That is not.

THE COURT:  -- in the future --

MR. EARLES:  No, ma'am.

THE COURT:  -- in any Western District case.

MR. EARLES:  You have my assurance, Your Honor. There is also no agreement between Laborde Earles and MMA. Mr. Moseley -- and I don't know if he just chose the wrong word, but he said that he is associated with Laborde Earles. There is no association, no agreement, no affiliation at all.  What we've done is -- and when it comes to the fee agreement there is no agreement between us, Your Honor.  All that we have said to -- in a letter to Judge Cain and to Assistant Special Master Cole that we would not object to that quantum meruit argument, but that was solely up to the Court for any fee that they would request from the Court, or any expenses, reasonable expenses that they had that they would request from the Court, we would not object to a certain percentage.

THE COURT:  This is part of the reason why we're

going to follow through on the opposition to the intervention, because the issues raised in the opposition to the intervention would suggest that for reasons stated in the opposition that should not be an issue for anybody.

MR. EARLES: Right.

THE COURT: All right. So we are going to flesh it out that way. But what needs to happen in the meantime is MMA has already been told no more communication, none, zip, nada, not by you, not by anybody affiliated with you, and if we find out that somehow you have attempted to circumvent this order through some means that I can't even envision then I would think that there is probably going to be even more serious problems than we already have.

I am asking anybody in this courtroom who is representing clients who were formerly with MMA to advise this Court if there is any contact made with any client after today.

What else can I do? We still have -- the stuff that you are bringing up is stuff that is coming up in the consideration of the motion to intervene for fees, right?

MR. MARKS: No, Your Honor. On Friday they tried to settle a case of one of my clients.

THE COURT: Oh, that is not good.

(Multiple people talking simultaneously.)

THE COURT: Okay. What case was that?

UNKNOWN SPEAKER:  This was in the Eastern District.

THE COURT:  Then you will have to bring that up with Judge North.

UNKNOWN SPEAKER:  Okay.

MR. EARLES:  Your Honor, if I may, just a couple of other things I would like the Court to be made aware of. It is my understanding or my position that MMA -- the cases that Laborde Earles has assumed representation in the Western District that MMA is withdrawing and Laborde Earles will be substituting as counsel of record.  The two firms will not be co-counsel, they will not be partners, and they are not involved in a joint venture in any way.  There is no association, no agreement, nothing.  We are just substituting as counsel and they'll make their argument in front of Your Honor or before Judge Cain, or whoever that may be.  But there is no written agreement, there is no deal, we are not partners, we are not together in any way.

THE COURT:  Okay.  All right.

MR. EARLES:  Thank you.

THE COURT:  All right.  Anything else from you?

MR. MARKS:  I could talk all day Judge, but --

THE COURT:  Yeah, just let Judge North know what is going on because I don't have -- I have got enough on my plate without taking on the Eastern District issues as well.

Okay.  All right.  Anything else?

MR. MILLER:  Kerry Miller, Your Honor.  One thing that relates back to your question of Mr. Moseley I would like some consideration on and that is the application of Your Honor's order with respect to MMA -- MMA's obligations with former clients, which is what we started when we came back at 2:30.  And there was some back and forth as to whether it would apply to former clients in filed cases or former clients across the board.

THE COURT:  I think the distinction being made, and I am glad he did it because it caused me to clarify what I am saying, they are not to communicate with anybody about any case that they filed, not any client anyway, about any case that they filed in the Western District of Louisiana.  And they -- neither they nor anybody affiliated with them, associated with them, on their behalf or otherwise, is to communicate with them either.  And that is true even if they were to remain counsel of record on a case where the plaintiff is not -- nobody has come in to substitute for those people.  We're going to figure out a way to handle those cases separately.  The problem is we have multiple cases where there was never an appearance by a defendant so that we don't have somebody on the other side to dispose of them, but we will do it internally, you know, as best we can, because the stay order got issued before they ever, you

know, came in and made a formal appearance.

Having said that, though, I do want everybody to know that throughout all of these cases not long ago we did lift the stay for purposes of somebody coming in to make an appearance on behalf of the defendant just so we would have somebody on the other side so we're not talking in a vacuum.

In some cases the defendant has taken us up on that. In other cases I am afraid they just don't even know, you know, because they are not getting notice. They did not -- or if they got the summons, then they got the stay order, then there was nothing that they could do.

So, anyway, we're just -- you know, I welcome the input of any of the attorneys involved whether on the plaintiff's side or the defendant's side of the best, easiest way to get to filter through these cases. I know that there are quite a few out there where we are never going to hear from the plaintiff. They may or may not even know that they sued. And so -- and so we just have to handle it as best we can and will continue to do that. All right?

MR. MILLER: Yeah. Thank you. I appreciate the clarification as to the scope of Your Honor's --

THE COURT: Yes. All right. Anybody else?

All right. Court is adjourned.

(Court adjourned at 2:45 p.m.)

24

CERTIFICATE OF OFFICIAL REPORTER

     I, JODI D. TERRY, RPR, Federal Official Court Reporter, in and for the United States District Court for the Western District of Louisiana, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                    /s/ Jodi D. Terry

                    JODI D. TERRY, RPR,
                    Official U.S. Court Reporter