**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | * | **CASE NO. 24-31596** |
| | * | |
| **MMA LAW FIRM, PLLC,** | * | |
| | * | |
| **Debtor** | * | |
| **MMA LAW FIRM, PLLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **MATTHEW MONSON,** | * | **ADVERSARY NO. 26-03107** |
| **THE MONSON LAW FIRM, LLC** | * | |
| **KATHERINE MONSON,** | * | |
| **ALLIED TRUST INSURANCE** | * | |
| **COMPANY, JAMES J. DONELON III,** | * | |
| **AND JAMES DAVID CALDWELL JR.** | * | |
| | * | |
| **Defendants.** | * | **JURY TRIAL DEMANDED** |

**DEFENDANTS JAMES J. DONELON III AND JAMES DAVID CALDWELL, JR.'S RULE 12(b)(6) MOTION TO DISMISS COUNT SEVEN OF THE SECOND AMENDED COMPLAINT**

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

Defendants James J. Donelon III ("Donelon") and James David Caldwell, Jr. ("Caldwell") (collectively, the "Former LDI Officials") move under Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012(b), to dismiss with prejudice

Count Seven of MMA Law Firm, PLLC's Second Amended Complaint ("SAC") (Dkt. 28). The Former LDI Officials respectfully show as follows:

## I. INTRODUCTION

Count Seven is the only claim asserted against the Former LDI Officials. It is an individual-capacity claim under 42 U.S.C. § 1983 alleging that Donelon, Caldwell, and Matthew Monson conspired to use Louisiana governmental power to impair MMA's contingent-fee interests and destroy its Louisiana law practice. Dkt. 28, ¶¶ 642–667. The claim is untimely, does not plead an underlying constitutional deprivation caused by either Former LDI Official, and is barred by qualified immunity. Absolute immunity also protects the formal adjudicative and prosecutorial functions challenged in the SAC.

Timeliness comes first. Count Seven is based principally on LDI actions taken in 2023. MMA alleges that those actions impaired its fee interests and destroyed the going-concern value of its Louisiana practice before MMA filed bankruptcy on April 9, 2024. MMA expressly admits that its injury from the use of state regulatory power "was apparent when the LDI Order issued." Dkt. 28, ¶ 658. Texas's two-year limitations period governs. Section 108(a) of the Bankruptcy Code extended any unexpired prepetition period no later than April 9, 2026, two years after MMA's voluntary petition constituted the order for relief. MMA filed its Original Complaint on April 8, 2026, but did not add the Former LDI Officials until the SAC was filed on July 4, 2026.

Relation back is unavailable. The Former LDI Officials did not receive actual or constructive notice within Rule 4(m)'s period. The timely Original Complaint also identified both officials, described their positions, and alleged the core conduct now offered to support Count Seven. MMA knew who the Former LDI Officials were and what it claimed they had done. Its decision to sue other parties, while omitting the Former LDI Officials, was not a mistake

concerning identity under Rule 15(c). MMA's later acquisition of additional evidence involving 4Warn does not change when the known injury and its known connection to the officials accrued.

Count Seven also fails on its own allegations. MMA does not allege that it paid the $2 million fine, that LDI collected it, or that either Former LDI Official seized settlement proceeds, cancelled a client contract, transferred an earned fee, revoked a law license, or adjudicated ownership of a fee. MMA instead alleges consequential business losses from regulatory activity and from a much broader series of court orders, disciplinary actions, client decisions, successor-counsel activity, financing disputes, and the withdrawal of MMA's litigation counsel. Those allegations do not identify a defendant-specific deprivation of a vested property entitlement.

Even if MMA had pleaded a constitutional violation, it identifies no controlling precedent that made the asserted violation clear in this setting. The relevant question is not whether officials may deprive a person of property without due process at some abstract level. It is whether a reasonable Louisiana insurance official in 2022 and 2023 would have understood that investigating alleged insurance-related misconduct, issuing or advising on reviewable administrative orders under a disputed interpretation of state law, communicating guidance to regulated insurers after independent court and disciplinary orders, or considering a referral to prosecutors violated MMA's federal rights in prospective fees, client relationships, goodwill, and going-concern value. MMA does not and cannot meet these standards.

## <u>II. RELEVANT ALLEGATIONS AND PROCEDURAL HISTORY</u>

MMA alleges that Donelon caused LDI to retain 4Warn in 2022, that Monson urged regulatory action, and that LDI issued a cease-and-desist order on February 17, 2023. Dkt. 28 ¶¶ 75, 96, 98. On May 1, 2023, LDI issued another cease-and-desist order and notices imposing four $500,000 fines on MMA and three of its attorneys. *Id.* ¶¶ 101; Dkt. 28-15. MMA alleges that

Monson congratulated Donelon on the order, publicly claimed credit for it, and attributed it to his "constant follow up with Commissioner Donelon." Dkt. 28, ¶¶ 102–105.

As to Caldwell, MMA alleges that he asked Monson in April 2023 how to contact Magistrate Judge Michael North and that Caldwell later served as the LDI contact for Directive 221. *Id.* ¶¶ 109–111. Directive 221 was issued to regulated insurers after the Louisiana Supreme Court suspended Huye, stayed MMA's state-court cases, and appointed a special trustee to assist former clients. Directive 221 at 1–2; Dkt. 28, ¶¶ 108–110. MMA also relies on a February 1, 2025 text in which Caldwell stated that he was still trying to develop a case that a district attorney might prosecute. Dkt. 28, ¶ 121.

The constitutional injury pleaded in Count Seven is the impairment of MMA's contingent-fee interests and loss of its Louisiana practice while the 2023 LDI order was operative. *Id.* ¶¶ 650, 653, 664. MMA alleges that later vacatur could not restore its clients, reputation, and going-concern value. *Id.* ¶ 650. It filed for bankruptcy on April 9, 2024 after ceasing Louisiana operations. *Id.* ¶ 322.

On April 8, 2026, MMA filed its Original Complaint. Dkt. 1. MMA did not name the Former LDI Officials as defendants, but it identified both by name and office and alleged the same core facts concerning Monson's communications with Donelon, the LDI orders, Monson's congratulatory text and public credit-claiming, Caldwell's communications concerning Magistrate Judge North, Directive 221, and Caldwell's February 2025 text. Dkt. 1, ¶¶ 77–92, 166–168. On July 4, 2026, MMA filed the SAC. Dkt. 28. The SAC was the first pleading in which MMA named the Former LDI Officials as defendants and asserted any cause of action against them. *Id.* at ¶¶ 13–14, 642–667.

## III. LEGAL STANDARD

A statute of limitations defense may be resolved under Rule 12(b)(6) when the bar is evident from the complaint, and the complaint fails to provide any basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Stanley v. Morgan*, 120 F.4th 467, 470 (5th Cir. 2024). The Court accepts well-pleaded facts as true, but it does not accept legal conclusions, conclusory tolling allegations, or unreasonable inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider documents attached to or incorporated into the SAC, documents referenced in the SAC and central to the claim, and matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A document attached to a complaint controls in the event such document conflicts with a conclusory allegation set forth in the complaint. *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

Qualified immunity protects a public official unless the plaintiff pleads facts showing both a constitutional violation and a right that was clearly established when the official acted. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024). Once qualified immunity is invoked, MMA bears the burden to overcome it. *Green v. Thomas*, 129 F.4th 877, 883 (5th Cir. 2025). MMA must plead specific facts giving rise to a plausible claim and must defeat immunity with equal specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## IV. COUNT SEVEN IS TIME-BARRED

The timeliness issue is straightforward. The claim accrued no later than April 9, 2024, and § 108(a) extended the outside deadline only to April 9, 2026. The July 4 SAC cannot relate back because MMA made no identity mistake. The 4Warn allegations do not toll limitations, and Caldwell's 2025 text caused no new constitutional injury.

### A. The claim accrued when MMA knew its injury and the Former LDI Officials' alleged causal roles.

Section 1983 borrows the forum state's general personal-injury limitations period. Texas provides two years. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Winzer v. Kaufman County*, 916 F.3d 464, 470 (5th Cir. 2019). Federal law determines accrual. A claim accrues when the plaintiff knows or has reason to know of the injury forming the basis of the action and the causal connection between that injury and the defendant's conduct. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995); *Jenkins v. Tahmahkera*, 151 F.4th 739, 747–48 (5th Cir. 2025).

Accrual does not wait for every fact, every item of proof, the full extent of damages, or the legal significance of known events. *Jenkins*, 151 F.4th at 747–48. A plaintiff also need not know each defendant's identity when the injury and the role of the responsible governmental actors are reasonably discoverable. *Id.* at 749. An elective administrative appeal does not postpone accrual of an already completed § 1983 injury. *Stanley*, 120 F.4th at 471–72.

MMA's allegations place accrual in 2023. It admits that the alleged injury "was apparent when the LDI Order issued." Dkt. 28, ¶ 658. It alleges that Donelon issued the operative orders, the May 2023 order immediately imposed a cease-and-desist directive and monetary penalties, and Directive 221 followed in July 2023. *Id.* ¶¶ 98–113. It also alleges that those acts impaired its fee interests and destroyed its practice before corrective process could run. *Id.* ¶¶ 650, 653. Those allegations establish both the claimed injury and its alleged connection to LDI's decisionmaker and counsel.

The January 31, 2025 vacatur did not create the claim or restart limitations. MMA's theory is that administrative review came too late because the practice had already been destroyed. *Id.* ¶ 650. At the latest, MMA knew the asserted deprivation and its alleged connection to the 2023 LDI actions when it ceased Louisiana operations and filed bankruptcy on April 9, 2024. *Id.* ¶ 322.

**B. Section 108(a) made April 9, 2026 the outside deadline.**

When MMA filed its voluntary Chapter 11 petition on April 9, 2024, the ordinary period for the 2023 acts had not expired. Section 108(a) permits a trustee, and a Chapter 11 debtor in possession exercising a trustee's powers under § 1107(a), to commence an action before the later of the otherwise applicable deadline or two years after the order for relief. A voluntary petition constitutes the order for relief. 11 U.S.C. §§ 108(a), 301(b), 1107(a).

The ordinary deadlines for the February, May, and July 2023 acts would have expired during 2025. Two years after the April 9, 2024 order for relief was April 9, 2026. Even giving MMA the full benefit of § 108(a), that date was the outside deadline for Count Seven's prepetition deprivation theory. MMA filed the Original Complaint one day earlier but asserted no claim against Donelon or Caldwell. It first sued them on July 4, 2026.

**C. MMA made no mistake concerning the proper parties' identities.**

Rule 15(c)(1)(C)(ii) separately requires the added defendant to know or have reason to know that the action would have been brought against that person but for "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). MMA cannot satisfy that requirement.

A genuine mistake differs from "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010). The Fifth Circuit likewise holds that a failure to identify or add an individual defendant is not the required Rule 15(c) mistake. *Winzer*, 916 F.3d at 471.

The Original Complaint named Donelon and Caldwell in its factual allegations, identified their public positions, and devoted numerous paragraphs to the conduct now invoked in Count Seven. Dkt. 1, ¶¶ 77–92, 166–168. MMA understood the difference between the private parties it

sued and the state officials it omitted. A later decision to assert a new legal theory against known actors is not a mistake concerning identity.

Rule 15(c)(1)(A) does not change the result. Texas law does not generally permit an amendment adding a new defendant after limitations merely because the claim arises from the same events. Tex. Civ. Prac. & Rem. Code § 16.068; *Balle v. Nueces County*, 952 F.3d 552, 556–58 (5th Cir. 2017) (finding that, pursuant to Rule 15(c)(1)(A) and Texas law, the statute of limitations barred adding additional defendants). MMA did not misname an intended defendant, sue a related entity in error, or confuse one official with another. It simply added two known defendants after the deadline.

**D. The concealment allegations do not delay accrual or toll limitations.**

MMA argues that LDI's retention of 4Warn and the "coordinated character" of the alleged conspiracy were concealed. Dkt. 28, ¶¶ 656, 658–663. That theory does not postpone federal accrual. The question is when MMA knew its injury and the alleged causal connection to the officials, not when it assembled every item of evidence supporting an agreement. *Jenkins*, 151 F.4th at 747–48. Monson publicly claimed in May 2023 that the order was entered in direct response to his complaint and resulted from his continued follow-up with Donelon. Directive 221 identified Caldwell as LDI's contact. By the outside deadline, the Original Complaint alleged the core coordination with both officials. The 4Warn allegations add evidence and motive. They do not reveal a new injury or previously unknown defendants.

The SAC also does not plausibly plead defendant-specific fraudulent concealment under Texas law. The doctrine requires facts showing that the defendant knew the plaintiff had been wronged and concealed that fact to deceive the plaintiff. Tolling ends when the plaintiff discovers, or through reasonable diligence should discover, facts that would prompt further inquiry. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011); *Hooks v. Samson Lone Star, Ltd. P'ship*, 457

S.W.3d 52, 57–58 (Tex. 2015). General allegations that a multi-party theory was not publicly disclosed do not identify an act by each Former LDI Official that kept MMA from discovering the known 2023 conduct. *See Jenkins*, 151 F.4th at 750.

The Original Complaint independently defeats the tolling theory. Before the deadline, MMA alleged that Monson pressed Donelon for action, that Donelon acknowledged LDI did not regulate law firms, that Monson congratulated Donelon and claimed responsibility, that Caldwell communicated with Monson about MMA and Magistrate Judge North, and that Caldwell later discussed a prosecution. Dkt. 1, ¶¶ 77–92, 166–168. MMA cannot defer accrual until it found additional support for an agreement it had already described.

**E. The February 1, 2025 text caused no new constitutional deprivation.**

MMA alternatively alleges that Caldwell's February 1, 2025 text is a timely overt act measured from the act itself. Dkt. 28, ¶¶ 657, 662. A § 1983 conspiracy, however, is derivative. It requires an actual deprivation of a federal right resulting from the agreement. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Characterizing conduct as part of a continuing conspiracy does not delay limitations for earlier completed injuries. Civil injury results from the overt acts that cause injury, not the continued existence of an alleged agreement. *Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987).

Count Seven's damages are expressly tied to impairment of fee interests and loss of the Louisiana practice "during the period the void LDI Order was operative." Dkt. 28, ¶ 664. The text may be offered as evidence of MMA's theory, but it does not create a new § 1983 injury or revive the completed 2023 claim.

## V. COUNT SEVEN FAILS ON THE MERITS AND QUALIFIED IMMUNITY APPLIES

The merits analysis has two parts. First, the SAC does not plead a constitutional deprivation caused by either official. The functions were discretionary, no vested property was taken, meaningful review was available, and the alleged facts do not show conscience-shocking conduct or a constitutional agreement. Second, qualified immunity applies because no materially similar precedent clearly established a violation. Finally, absolute immunity protects the formal adjudicative and prosecutorial functions, and immunity should be resolved before discovery.

### A. The challenged conduct involved discretionary governmental functions.

The Former LDI Officials first must show that the challenged conduct fell within their discretionary authority. That inquiry asks whether they performed nonministerial acts within the general boundaries of their official capacities. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022). It does not ask at the threshold whether their interpretation of state law was correct.

The SAC itself alleges that Donelon acted as Commissioner of Insurance and Caldwell acted as LDI counsel under color of state law. Dkt. 28, ¶ 645. Investigating suspected fraud affecting insurance claims, issuing or advising on administrative enforcement, communicating guidance to regulated insurers, and considering referral of suspected criminal conduct are governmental functions generally associated with those offices. MMA's allegation that LDI ultimately lacked statutory jurisdiction over this target challenges the legality of a particular exercise of those functions. It does not transform them into private or categorically unrelated conduct.

*Sweetin v. City of Texas City, Texas* does not support a different result. 48 F.4th 387 (5th Cir. 2022). There, a municipal permit officer detained ambulance drivers even though he knew he had no police power to detain anyone. *Id.* at 390–93. The detention was a function wholly outside

his assigned role. *Id.* at 392. Unlike the facts in *Sweetin*, the disputed acts in this case are regulatory, legal, and referral functions of the type the Former LDI Officials performed in office. Whether state law authorized those functions against MMA is part of the merits, not a basis to erase discretionary authority at the outset.

**B. MMA does not plead a constitutional deprivation caused by either official.**

Section 1983 imposes individual liability only for a constitutional violation personally caused by the defendant. A plaintiff must identify an official who was personally involved or whose acts were causally connected to the deprivation. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Collective allegations cannot substitute for defendant-specific conduct.

The allegations against Donelon identify participation in LDI activity. MMA alleges that he retained 4Warn, received information, issued the administrative orders, and issued Directive 221. Dkt. 28, ¶¶ 75–82, 98–111. Those allegations do not identify the property Count Seven says Donelon deprived MMA of. MMA does not allege that Donelon seized a settlement payment, transferred an accrued fee, cancelled a contingent-fee agreement, revoked an attorney's license, or adjudicated ownership of a fee.

The allegations against Caldwell are further removed. MMA alleges that he served as LDI counsel, asked Monson how to contact Magistrate Judge North, was listed as the contact for Directive 221, communicated about sanctions, and later discussed a possible criminal referral. *Id.* ¶¶ 108–125. MMA does not allege that Caldwell signed the May order, collected a fine, caused a criminal prosecution, compelled a client to discharge MMA, or transferred any property. Paragraph 125(g)'s assertion that "Donelon and Caldwell" caused LDI to issue the order is a conclusion that does not supply facts connecting Caldwell to the alleged deprivation.

MMA's own allegations also identify independent causes for the loss of its practice and bankruptcy. The Louisiana Supreme Court suspended Huye, stayed MMA's state-court cases, and

appointed a special trustee. Federal courts entered separate case-management, suspension, and fee orders. MMA's clients discharged the firm or obtained successor counsel. MMA further alleges that Phelps Dunbar's withdrawal left MMA unable to respond to a pending summary-judgment motion exceeding $30 million and "forced" MMA to file bankruptcy on April 9, 2024. Dkt. 28, ¶ 363. Count Seven cannot aggregate those independent decisions and attribute the complete loss of the practice to each Former LDI Official.

The Louisiana Supreme Court's recent opinion confirms the point without deciding disputed facts. *In re MMA Law Firm, PLLC*, No. 2026-CQ-00161, 2026 WL 1862008, *3 (La. June 29, 2026). The Court highlights that multiple courts stayed cases or sanctioned MMA's attorneys, that MMA's managing member attributed to the firm's inability to continue representing Louisiana clients to adverse court orders and attorney suspensions, and that MMA either withdrew or was discharged from virtually all remaining cases. *Id.* at *1-2. The opinion expressly made no factual finding about alleged misconduct. *Id.* at *3. It nevertheless shows why MMA's claimed loss cannot be pleaded as a direct, indivisible deprivation by Donelon and Caldwell.

MMA's claimed contingent-fee interests also do not establish the deprivation alleged. Louisiana law recognizes a special privilege in certain fee rights, but the entitlement is conditional. A contract formed through illegal or unethical means may be absolutely null, while recovery under a valid contract may be reduced or denied based on the circumstances of discharge and attorney conduct. *Id.* at *1, *4; La. R.S. § 37:218. MMA continues to litigate fee claims against successor firms and alleges that it has recovered some amounts. Dkt. 28, ¶¶ 236–241, 506. Even assuming a matured fee claim can constitute protected property, the SAC does not allege that either Former LDI Official extinguished that claim. Reduced recovery and litigation expense are alleged damages, not a governmental transfer of the underlying entitlement.

The same problem applies to the "operating Louisiana law practice." Dkt. 28, ¶ 650. Goodwill, client relationships, financing, and future revenue may have economic value, but economic value alone does not create a constitutional property entitlement. With property rights based in an enforceable contract, a claimant asserting a property interest must show more than a "unilateral expectation of it[ ]" and must "have a legitimate claim of entitlement to it." *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Due process protects a legitimate claim of entitlement grounded in an independent source of law. *Id.* at 577 (discussing a property interest in a benefit). MMA identifies no law ensuring that it would retain a particular client portfolio, referral network, lender, reputation, or stream of future contingent fees.

**C. MMA received constitutionally meaningful process.**

A procedural due process claim consists of: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). MMA does not plead the first element for the reasons just addressed. It also does not identify process that was constitutionally required and denied.

The May 1 order advised MMA that it could demand an administrative hearing within thirty (30) days and could seek a stay from the Division of Administrative Law. Dkt. 28-15, p. 12. MMA does not allege it requested a stay or that a stay was denied. Rather, MMA invoked administrative review, challenged LDI's jurisdiction, and obtained vacatur. Dkt. 28,¶¶ 118–120. MMA's complaint is that the review did not restore every business consequence that occurred in the interim. Due process does not guarantee a correct initial decision or complete elimination of collateral economic loss. It requires an adequate opportunity to contest the action. To the extent MMA contends a hearing had to precede the order, it does not apply the relevant balancing factors or explain why an immediate pre-order hearing was constitutionally required despite the asserted public interest and the available stay procedure. *See Mathews v. Eldridge*, 424 U.S. 319, 335

(1976) (concluding that an evidentiary hearing is not required prior to the termination of disability benefits).

The Fifth Circuit applied that principle to Louisiana insurance regulators in *Liberty Mutual Insurance Co. v. Louisiana Department of Insurance*, holding that a regulated entity failed to state a procedural-due-process claim when it did not demonstrate the absence of an adequate Louisiana post-deprivation remedy. 62 F.3d 115, 117–18 (5th Cir. 1995). MMA identifies no additional procedure that federal law required, when it had to occur, how either Former LDI Official prevented it, or why the available hearing, stay, and review mechanisms were constitutionally inadequate.

MMA's ultra vires theory does not improve the claim. If the challenged acts were official agency action, the written hearing, stay, and review procedures accompanied that action. If MMA instead characterizes the conduct as unauthorized action outside established state procedures, adequate post-deprivation remedies ordinarily satisfy procedural due process when pre-deprivation process is not practicable. *See Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984). Under either characterization, Count Seven does not plead an absence of constitutionally meaningful process.

**D. The allegations do not state a substantive-due-process violation or a plausible constitutional agreement.**

The threshold question in a substantive due process challenge is whether the behavior of a governmental officer is so egregious and arbitrary that it shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). That demanding standard does not federalize every state-law error, disputed jurisdictional interpretation, improper motive, or injurious regulatory decision. The complaint itself supplies a public-regulatory context. It alleges concern about insurer insolvencies, Louisiana's obligations for failed carriers, and thousands of insurance

suits involving representations to insurers and insurance proceeds. Dkt. 28, ¶¶ 46–50, 73–74. The orders contained detailed findings, cited statutory authority, and provided review. The fact that an administrative law judge later rejected LDI's jurisdiction does not make the earlier action conscience-shocking as a matter of federal law.

The conspiracy theory fails for an additional reason. A § 1983 conspiracy requires facts showing an agreement to deprive the plaintiff of a federal right and an actual constitutional deprivation resulting from that agreement. *Cinel*, 15 F.3d at 1343; *Bevill*, 26 F.4th at 274–75. Friendship, communications, shared opposition, and parallel conduct may support an inference that people coordinated. However, those occurrences do not establish an agreement to deny constitutionally required process.

MMA does not identify when or how the Former LDI Officials agreed with Monson that MMA would be deprived of property without due process. The "Well done and more to come" text followed issuance of the May order. Monson's public credit-claiming shows his view of his influence, not the terms of a prior agreement. Caldwell's inquiry about contacting Magistrate Judge North does not allege that he contacted the judge or made an ex parte submission. His February 2025 text occurred long after the alleged destruction of the practice. These allegations do not plausibly establish an agreement to deny constitutionally required process, and they do not plausibly show that Caldwell joined any agreement before the claimed deprivation.

*Bevill* illustrates the missing specificity. There, the complaint alleged a joint meeting among public officials, coordinated threats to withhold governmental resources, and direct pressure that produced a particular retaliatory termination. 26 F.4th at 273–75. Count Seven alleges no comparable facts showing an agreement about unconstitutional means or a denial of process.

At most, it alleges a common objective to investigate and pursue MMA. Because MMA also fails to plead an underlying constitutional deprivation, the derivative conspiracy claim cannot stand.

**E. No clearly established law placed the asserted violation beyond debate.**

Qualified immunity independently requires dismissal even if the Court assumes a constitutional violation. A right is clearly established only when precedent places the constitutional question beyond debate in the specific circumstances confronting the official. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts may not define the right at a high level of generality. *Id.* at 742; *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The Supreme Court recently reiterated that a plaintiff ordinarily must identify a case in which an official taking similar actions in similar circumstances was held to have violated the Constitution. *Zorn v. Linton*, 146 S. Ct. 926, 930–31 (2026).

MMA defines the right as freedom from an official's use of regulatory or police power "in the clear absence of all jurisdiction." Dkt. 28, ¶ 653. That formulation is too general and treats a state-law conclusion as the federal constitutional rule. Instead, the relevant question before this Court is whether existing precedent made it beyond debate that a Louisiana insurance commissioner or agency lawyer violated the Fourteenth Amendment by participating in an investigation and reviewable enforcement proceeding concerning alleged insurance-related conduct by a law firm, where the fine was not alleged to have been collected, the order was ultimately vacated for lack of state-law jurisdiction, and the asserted property consisted of contingent fees and the economic value of a law practice.

MMA identifies no Supreme Court or Fifth Circuit authority answering that question. The later administrative ruling did not retroactively establish the federal law that governed in 2022 and 2023. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Unless that provision supplies the federal right on which the claim rests,

violation of state law does not itself defeat qualified immunity. *Id.* at 194 n.12 ("[T]here is no claim that the state regulation itself or the laws that authorized its promulgation create a cause of action for damages or provide the basis for an action brought under § 1983.").

MMA will likely rely on *Stidham v. Texas Commission on Private Security*, 418 F.3d 486 (5th Cir. 2005), but that case does not clearly support this claim. In *Stidham*, regulators bypassed available procedures and sent threats directly to the plaintiff's customers, declared the plaintiff and customers to be violating criminal law, and threatened the customers with prosecution if they continued doing business with him. *Id.* at 487–89. The court recognized an occupational-liberty theory and rejected a claimed property interest in speculative profits from at-will customer arrangements. *Id.* at 491–92 n.9.

In this case, the circumstances are materially different. The core acts were formal administrative orders accompanied by hearing, stay, and review procedures. MMA used those procedures and prevailed. Directive 221 was directed to regulated insurers after separate court and disciplinary orders and reminded insurers of duties to communicate with policyholders. Directive 221 at 1–2. MMA does not allege that Caldwell threatened clients with prosecution, that either official revoked an attorney's license, or that either official controlled the courts and disciplinary authorities whose independent orders affected MMA's practice. Count Seven is also pleaded as a property-deprivation claim based on fees and business value, not the occupational-liberty claim that drove *Stidham*.

Allegations of friendship, hostility, or improper motive cannot supply the missing precedent. The clearly-established inquiry is objective. MMA must identify a law that gave every reasonable official fair warning that the particular conduct violated a federal right. Because no materially similar authority did so, the Former LDI Officials are entitled to qualified immunity.

**F. The formal enforcement functions are also protected by absolute immunity.**

Absolute immunity attaches to functions rather than titles. Agency officials performing adjudicative or prosecutorial functions in a proceeding with procedural safeguards and appellate review receive the same protection afforded to judges and prosecutors. *Butz v. Economou*, 438 U.S. 478, 513 (1978); *O'Neal v. Mississippi Board of Nursing*, 113 F.3d 62, 65–67 (5th Cir. 1997).

To the extent Count Seven seeks damages from Donelon for issuing formal administrative orders or from Caldwell for presenting or advising LDI's enforcement position, those acts are functionally adjudicative or prosecutorial. The May order was part of a formal enforcement process, identified hearing and stay procedures, and was subject to review. Absolute immunity is function-specific, and does not depend on every alleged communication being protected. Thus, absolute immunity independently bars damages based on the formal enforcement decisions.

**G. The Court should decide qualified immunity before discovery.**

Qualified immunity is immunity from suit and the burdens of litigation, not simply a defense to liability. *McKay*, 117 F.4th at 746. In a § 1983 action against Louisiana insurance regulators, the Fifth Circuit held that qualified immunity had to be addressed before discovery because the defense carries a right to avoid burdensome pretrial proceedings. *Liberty Mutual*, 62 F.3d at 117. *Backe* likewise requires a court to determine first whether the complaint pleads facts that state a constitutional violation and overcome immunity. 691 F.3d at 648.

MMA has amended twice and filed a 175-page SAC with extensive exhibits. It expressly pleads its argument against qualified immunity. Dkt. 28, ¶ 653. The issue is not whether discovery might uncover a different constitutional theory. The issue is whether the facts MMA chose to plead state a violation of clearly established law. They do not. The Court should dismiss Count Seven without immunity discovery and stay any discovery directed to the Former LDI Officials while the motion is pending. If dismissal is denied, the Court should require a Rule 7(a) reply identifying

the act, deprivation, causation, and clearly established law asserted against each official. *See Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995).

## VI. DISMISSAL SHOULD BE WITH PREJUDICE

MMA has already pleaded its accrual and tolling theories in detail. The limitations defect is legal. The Former LDI Officials were first sued after § 108(a)'s outside deadline, the timely Original Complaint shows that their identities and core alleged conduct were known, Rule 15(c)'s mistake requirement cannot be met, and the sole later communication caused no new constitutional deprivation.

The merits defects are also legal. Count Seven does not identify property taken by either official, a constitutionally inadequate procedure, a plausible agreement to violate a federal right, or controlling precedent that clearly established the asserted right. Claims based on the formal enforcement functions are also barred by absolute immunity. Further amendment would not change the dates, the contents of the prior pleading, the administrative-review process, or the absence of materially analogous law. Dismissal with prejudice is appropriate.

## VII. CONCLUSION

For these reasons, Defendants James J. Donelon III and James David Caldwell, Jr. respectfully request that the Court dismiss Count Seven of the Second Amended Complaint with prejudice. Alternatively, the Court should dismiss with prejudice all portions of Count Seven predicated on acts occurring before April 9, 2024, dismiss any purported claim based on the February 1, 2025 communication because the SAC alleges no resulting constitutional deprivation, and require a Rule 7(a) reply and stay discovery directed to the Former LDI Officials pending final resolution of qualified immunity. The Former LDI Officials request all other relief to which they are entitled.

Dated: September 2, 2026

Respectfully submitted by,


/s/ Joshua G. McDiarmid
Joshua G. McDiarmid, Attorney-in-Charge
Texas Bar No. 24090257
David S. Rubin
(*pro hac vice forthcoming*)
**BUTLER SNOW LLP**
445 North Boulevard, Suite 300
Baton Rouge, Louisiana 70806
Phone: (225) 325-8700
Email: josh.mcdiarmid@butlersnow.com
david.rubin@butlersnow.com

*- and -*

Roshni Mahendru
Texas Bar No. 24138224
**BUTLER SNOW LLP**
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Phone: (737) 802-1800
Email: roshni.mahendru@butlersnow.com

*Counsel for Defendants,*
*James J. Donelon III and*
*James David Caldwell Jr.*


## CERTIFICATE OF SERVICE

I certify that on September 2, 2026, a true and correct copy of the foregoing document was served via the CM/ECF system on Miriam Goott, *Walker & Patterson, PC*, P.O. Box 61301, Houston, Texas 77208, mgoott@walkerandpatterson.com, David Keith Isaak and Allison Standish Miller, *Steptoe LLP*, 717 Texas Avenue, Suite 2800, Houston, Texas 77002, disaak@steptoe.com and amiller@steptoe.com, Shaundra M. Shudmak, *Lugenbuhl Wheaton Peck Rankin & Hubbard*, 601 Poydras Street, Suite 2775, New Orleans, Louisiana 70130, sschudmak@lawla.com, Marcia Suzanne Montero, *Sternberg, Naccari & White*, 935 Gravier Street, Suite 1800, New Orleans, Louisiana 70112, suzy@snw.law, and Ryan J. Richmond, *Sternberg, Naccari & White*, 450 Laurel Street, Suite 1450, Baton Rouge, Louisiana, ryan@snwlaw.com.

/s/ Joshua G. McDiarmid
Joshua G. McDiarmid

102455670.v1